No. 49,850

CHELSEA PLAZA HOMES, INC., *Appellee*, v. JOYCE MOORE, *Appellant.*

(601 P.2d 1100)

Opinion filed October 27, 1979.

*Maureen Scully,* of the Wyandotte County Legal Aid Society, of Kansas City, argued the cause and was on the brief for the appellant.

*James P. Davis,* of Kansas City, Kansas, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This was originally an action for possession of premises and for rent, brought by the landlord, Chelsea Plaza Homes, against the tenant, Joyce Moore. Plaintiff-landlord dismissed its suit the day of trial. Defendant-tenant proceeded to trial on her counterclaim, alleging violation of the Residential Landlord and Tenant Act [RLTA] (K.S.A. 58-2540 *et seq.*) and the Consumer Protection Act [CPA] (K.S.A. 50-623 *et seq.*). The trial court entered judgment for the landlord on the counterclaim and the tenant appeals.

In January, 1977, Ms. Moore entered into an apartment rental agreement with the landlord. The monthly rental was $169.00, to be paid on or before the 6th day of the month. The lease provided a $10.00 charge would be required for late payments.

In November, 1977, the tenant failed to pay her rent on time and received an eviction notice. On November 14, after receiving the notice, Ms. Moore talked to the landlord's resident manager and explained she was expecting an emergency Aid to Dependent

Children check and displayed documents to that effect. On November 23, 1977, the forcible detainer action herein was commenced. On November 25, 1977, Ms. Moore returned to the apartment office to pay the rent plus the $10.00 late charge. The resident manager accepted the payment but informed Ms. Moore that the action had already been filed and the manager did not know if the action could be stopped. Subsequently, Ms. Moore was advised she would have to pay an additional $55.00. At trial this was denominated as a novation fee by the landlord and attorneys' fees-court costs by the tenant. By agreement it was to be paid at $10.00 per month and two such payments had been made by the time of trial.

The counterclaim sought $2,000 damages pursuant to K.S.A. 50-636 (now 1978 Supp.) (Consumer Protection Act) for each of three alleged violations of the Residential Landlord and Tenant Act, as well as attorneys' fees. The three alleged violations and the relevant RLTA statutes are as follows:

1. Paragraph 8 of the lease agreement which provided:

"TENANT agrees to permit the LANDLORD to enter at all reasonable times to view the premises and make repairs, alterations, or perform such services, as LANDLORD may deem necessary or proper." (K.S.A. 58-2547[b] and 58-2557.)

2. Paragraph (d) of the lease agreement which provided:

"If default be made in the payment of rent after the same is due, or upon the breach of any of the covenants and agreements herein contained, the LAND-LORD shall have the right to enter and take possession of the leased premises, and the TENANT agrees to deliver same without process of law, and this LEASE AGREEMENT, at the option of the LANDLORD, shall terminate, but for this cause the obligation of the TENANT to pay monies due to the LANDLORD shall not cease, and the TENANT shall be liable for any loss or damage to the LANDLORD for TENANT'S failure to comply with the terms hereof." (K.S.A. 58-2547[a][1] and 58-2569.)

3. Payment of landlord's attorneys' fees under paragraph (d) above. (K.S.A. 58-2547[a][3].)

Each of the above alleged violations of the Residential Landlord and Tenant Act was averred to be a deceptive practice proscribed by K.S.A. 50-626(b)(8) of the Consumer Protection Act.

At the conclusion of the trial the court took the matter under advisement and subsequently issued its memorandum opinion, concluding that the $55.00 was a proper charge and that no violation of the CPA was proven.

On appeal, the defendant-tenant raises the following two points:

    I.   Did the court err in finding that plaintiff's use of the rental agreement was not a violation of the Kansas Consumer Protection Act?

    II.  Did the court err in holding that the $55.00 novation fee was enforceable for the time and expense of reinstating the existing rental agreement?

Before proceeding to the points specifically raised on appeal, the court must resolve a significant issue inherent in the case. It is clear that the counterclaim is the result of a hybridization of the Residential Landlord and Tenant Act and the Consumer Protection Act. Specific alleged violations of the RLTA are used as the deceptive practices of the CPA. The reason for this is clear. The RLTA permits only the recovery of *actual* damages by a tenant, and those only when the prohibited provisions are deliberately used by the landlord (K.S.A. 58-2547); whereas, the CPA, for deceptive acts or practices (K.S.A. 50-626[*b*][8]), permits recovery of actual damages *or* $2000, whichever is greater, plus reasonable attorneys' fees (K.S.A. 50-634 and 636 [now 1978 Supp.]). We must initially determine whether the Residential Landlord and Tenant Act is a complete and specific act which takes precedence over the Consumer Protection Act in the area to which it pertains.

It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it. Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case. *Garden City Educators' Ass'n v. Vance,* 224 Kan. 732, 736, 585 P.2d 1057 (1978); *State, ex rel., v. Throckmorton,* 169 Kan. 481, 486, 219 P.2d 413 (1950).

The Consumer Protection Act, in its definitions statute, K.S.A. 50-624, provides in relevant part:

"(*b*)  'Consumer' means an individual who seeks or acquires property or services for personal, family, household, business or agricultural purposes.

"(*c*)  'Consumer transaction' means a sale, lease, assignment or other disposition for value of property or services within this state (except insurance contracts and securities regulated under federal or state law) to a consumer or a solicitation by a supplier with respect to any of these dispositions.

. . . .
"(g) 'Property' includes real estate, goods, and intangible personal property.

. . . .
"(i) 'Supplier' means a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in, or enforces consumer transactions, whether or not he or she deals directly with the consumer."

The above language is clearly broad enough to include all leases of real estate.

The Residential Landlord and Tenant Act, in its definitions statute, K.S.A. 58-2543, defines action, building and housing codes, dwelling unit, good faith, landlord, organization, owner, person, premises, rent, rental agreement, roomer, security deposit, single family residence, and tenant. K.S.A. 58-2541 designates "arrangements" not subject to the RLTA (inapplicable here).

In *Clark v. Walker*, 225 Kan. 359, 590 P.2d 1043 (1979), this court considered the purpose of the RLTA and stated:

"At the outset it would be helpful to consider the Residential Landlord and Tenant Act as a whole and the legislative purpose of enacting it. The legislative history and background for the act is contained in the Report of the Special Committee on Consumer Protection to the 1974 legislature pertaining to proposal No. 17 governing landlord-tenant relations. In its report, the special committee points out that the subject of study was 'the need for additional legislation governing landlord-tenant relations.' In general, existing Kansas statutes in this area related to the duration and termination of various tenancies and forcible detainer actions. At the time of the report, there was little or no statutory law in Kansas governing the more substantive aspects of landlord-tenant relationships. The report noted that the Uniform Residential Landlord-Tenant Act was approved by the National Conference of Commissioners on Uniform State Laws at its August 1972, annual meeting. The committee then makes the following conclusions and recommendations:

" 'Upon analysis of the information before the Committee, it became apparent that the antiquated common law concepts and absence of statutory law creates problems and works to the detriment of both landlords and tenants who may very well be operating on different premises. It is the opinion of the Committee that there is a need to statutorily state the various obligations and other elements of tenancy so as to adequately express the modern day concepts of landlord-tenant relations. It should not be made the responsibility of the courts to develop these concepts. Therefore, the Committee recommends that the 1974 legislature enact a comprehensive landlord-tenant code which would establish a single standard of reference for both landlords and tenants.' (17-3.)

"The Kansas act was enacted in 1975. In its final form, it was based in part on the Uniform Residential Landlord-Tenant Act, but with some modifications. In the act, the legislature set forth the obligations, rights, and remedies of both

landlords and tenants. . . . [I]t is quite evident from the provisions of the law itself and the legislative history that the legislature considered the concerns and recommendations of both landlords and tenants in drafting a law which attempts to strike a reasonable balance between the positions advocated by the two groups. See Brand, *The New Residential Landlord and Tenant Act,* 44 J.B.A.K. 227 (1975). Under the act, both landlords and tenants gained certain advantages and suffered certain disadvantages." pp. 363-364.

The Consumer Protection Act's purpose is stated in K.S.A. 50-623 as follows:

"This act shall be construed liberally to promote the following policies:

"(a) To simplify, clarify and modernize the law governing consumer transactions;

"(b) to protect consumers from suppliers who commit deceptive and unconscionable practices;

"(c) to protect consumers from unbargained for warranty disclaimers; and

"(d) to provide consumers with a three-day cancellation period for door-to-door sales."

Clearly, the Consumer Protection Act covers a very broad area of transactions; whereas, the Residential Landlord and Tenant Act covers one very specific small area of transactions, and is complete within itself for that area. We therefore must conclude that for all transactions within its purview the Residential Landlord and Tenant Act controls and preempts the field. The attempted hybridization of the two acts herein has resulted in a sterile hybrid which is not viable, let alone capable of reproducing itself.

The tenant-appellant's first claim of error is: Did the court err in finding that plaintiff's use of the rental agreement was not a violation of the Kansas Consumer Protection Act?

The trial court did not hold the CPA to be inapplicable to the case herein, but held no violation of the act had been established. The trial court specifically found and concluded:

"5. K.S.A. 50-623 provides for the purpose and construction of the Kansas Consumer Protection Act. A careful study of this statute in light of the evidence presented in the case leads me to the conclusion that plaintiff's use of the rental agreement admitted into evidence was not a violation of said act.

"6. Certain provisions of the rental agreement (Defendant's exhibit 1), might fall within the prohibitions of K.S.A. 58-2547(a). However, there is no evidence that any of such prohibitions were in fact enforced by plaintiff nor is there any evidence that plaintiff *deliberately* used such rental agreement with knowledge that certain provisions were prohibited by the Residential Landlord and Tenant Act. Furthermore, there is no evidence that defendant tenant sustained any actual damages as a result thereof."

The judgment of a trial court is to be upheld if it is correct, even though the trial court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Belger Cartage Serv., Inc. v. Holland Constr. Co.,* 224 Kan. 320, Syl. ¶ 7, 582 P.2d 1111 (1978).

In view of our determination that the Consumer Protection Act is inapplicable to the case herein, the trial court did not err in determining there was no violation of the act.

The tenant-appellant's second claim of error is: Did the court err in holding that the $55.00 novation fee was enforceable for the time and expense of reinstating the existing rental agreement?

The trial court specifically found and concluded:

"1. Defendant and plaintiff's agent on November 25, 1977 entered into an agreement whereby plaintiff, in consideration of the payment of $55.00 and the rent then due and owing by defendant, agreed to cease legal proceedings to evict defendant from the premises described in the rental agreement.

"2. The $55.00 described in the evidence was not for attorneys fees and costs incurred by plaintiff in filing this action but was an amount calculated to reimburse plaintiff for the time and expense of reinstating the existing rental agreement that had been breached by defendant.

"3. The amount of $55.00 was established by plaintiff based on their vast experience in leasing rental property in the Kansas City Metropolitan Area.

"4. The defendant knowing she was delinquent in her rental payments freely and voluntarily agreed on November 25, 1977 to pay plaintiff $55.00 additional charge on a monthly basis in order to reinstate the rental agreement and avoid the cost and inconvenience of moving or being evicted."

### K.S.A. 58-2544 of the RLTA provides:

"(a) If the court, as a matter of law, finds: (1) A rental agreement or any provision thereof was unconscionable when made, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provision, or limit the application of any unconscionable provision to avoid an unconscionable result; or

"(2) a settlement in which a party waives or agrees to forego a claim or right under this act or under a rental agreement was unconscionable at the time it was made, the court may refuse to enforce the settlement, enforce the remainder of the settlement without the unconscionable provision or limit the application of any unconscionable provision to avoid any unconscionable result.

"(b) If unconscionability is put into issue by a party or by the court upon its own motion, the parties shall be afforded a reasonable opportunity to present evidence as to the setting, purpose and effect of the rental agreement or settlement to aid the court in making the determination."

Inherent in the trial court's findings above stated was the finding that the payment of $55.00 was not unconscionable as

contemplated by K.S.A. 58-2544. The record has been reviewed and these findings are supported by substantial competent evidence and, accordingly, are conclusive on appeal. *McKnight v. St. Francis Hosp. & School of Nursing,* 224 Kan. 632, 585 P.2d 984 (1978).

All points specifically raised, and of necessity before this court, have been determined and no error is shown.

The judgment is affirmed.

FROMME, J., not participating.