Greg BAILEY and Stacy
Bailey, Plaintiffs,

v.

MORGAN DRIVE–AWAY,
INC., Defendant.

Civ. A. No. 85–4132.

United States District Court,
D. Kansas.

Oct. 22, 1986.

Lynn Hursh, Turner & Boisseau, Overland Park, Kan., for plaintiffs.

Dale W. Bell, Guy, Helbert, Bell & Smith, Emporia, Kan., William T. North, Masoner & North, Cottonwood Falls, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This action was filed by the plaintiffs against the defendant, Morgan Drive-Away, for claims relating to a one-half section of plaintiffs' mobile home and its contents, which were damaged while being transported by the defendant. Plaintiffs' action was originally filed in the District Court of Pratt County, Kansas, and was subsequently removed to this court pursuant to 28 U.S.C. § 1446. Plaintiffs' petition contains six separate counts alleging breach of contract, negligence, estoppel, fraud, violation of the Kansas Consumer Protection Act and violation of K.S.A. 66–304.

The matter comes before the court on the defendant's motion for summary judgment. Defendant contends that all of the plaintiffs' claims should be dismissed, except for the breach of contract claim. Further, defendant argues that the breach of contract claim, as a matter of law, can only be based on the bill of lading issued by the defendant and signed by the plaintiffs.

The court is familiar with the standards governing the consideration of motions for summary judgment. To rule favorably on a motion for summary judgment, the court must first determine that the matters on file regarding the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Production Co.*, 639 F.2d 671, 672 (10th Cir. 1981). Pleadings and documentary evidence must be liberally construed in favor of the party opposing the motion. *Thomas v. United States Dept. of Energy*, 719 F.2d 342, 344 (10th Cir.1983). A party resisting a motion for summary judgment, however, must set forth specific facts showing that there is a genuine issue for trial. *Dart Indus., Inc. v. Plunkett Co. of Oklahoma, Inc.*, 704 F.2d 496, 498 (10th Cir.1983).

Many of the facts in this case are disputed by the parties. However, to clarify this court's rulings, the facts will be stated as follows. Sometime before November 2, 1984, plaintiffs made several telephone calls to defendant's local office. The plaintiffs inquired into the possibility of hiring defendant to transport their 1981 double-wide Commodore mobile home and its contents from Pratt, Kansas, to Lavant, Kan-

sas. According to the plaintiffs, the defendant's agent represented that the mobile home and its contents would be insured by the defendant to their full value in the event of an accident. Plaintiffs allegedly accepted these terms of shipment.

Shortly before the defendant arrived to transport the mobile home, plaintiffs were informed they had to split the home apart. However, plaintiffs understood that the defendant's agents would inspect the mobile home before shipment to ensure it was adequately secure for transportation. On November 2, 1984, defendant's drivers arrived to transport the mobile home. At the time, plaintiff Greg Bailey was given the bills of lading for the two sections of the mobile home, which he signed. The bills of lading contained several provisions purporting to limit the carrier's liability to pre-printed "released values." However, plaintiffs allege in their affidavit that Mr. Bailey was given no time to read the documents due to pressure by the defendant's agents. Plaintiffs also allege that they were not informed of the pre-established released value or the limitations on liability. Plaintiffs further state that Mr. Bailey assumed the bill of lading contained the terms represented earlier by defendant's terminal agent.

During the shipment, one section of the mobile home became disconnected from the truck, left the roadway and became severely damaged. Many of the contents left in that section of the mobile home were also damaged or destroyed. Plaintiffs are seeking damages for the loss of the entire mobile home, for the loss of the contents and for consequential living and storage expenses. The defendant claims that its liability is limited by the provisions in the bills of lading signed by Greg Bailey.

## ISSUES

### I. *Prior Oral Agreement.*

Defendant contends that plaintiffs' breach of contract claim can only be based on the bill of lading signed by Greg Bailey. It is well-established in Kansas that an individual who signs a contract has a duty to learn and know its contents before signing it. *Commercial Credit Corp. v. Harris*, 212 Kan. 310, 314, 510 P.2d 1322, 1325 (1973). One who signs a written instrument is bound by its terms in the absence of fraud, undue influence or mutual mistake, regardless of the person's failure to read it before it was signed. *Squires v. Woodbury*, 5 Kan.App.2d 596, 598, 621 P.2d 443, 446 (1980), *rev. denied*, 229 Kan. 671 (1981). However, courts have recently adopted the rule that when a party signs a contract without reading it, thinking he knows its terms, he has assented under mistake of fact if those terms are different from what he thought they were. Whether or not this mistake of fact makes the contract voidable depends on whether the other party had reason to know of the mistake. *Coleman v. Holecek*, 542 F.2d 532, 535 (10th Cir.1976); *Squires*, 5 Kan.App.2d at 599, 621 P.2d at 446–47.

■ Plaintiffs have alleged sufficient facts to create genuine issues as to the existence of fraud in light of the alleged misrepresentations made by defendant's agents. Similarly, there are disputed facts which relate to whether the defendant had reason to know that the plaintiffs signed the bill of lading under a mistake of fact. Therefore, summary judgment is improper on this issue.

■ Defendant also contends that the parol evidence rule prohibits the admission of evidence of prior oral agreements or negotiations to vary the terms of a subsequent written agreement. This rule is followed in Kansas. *See Stapleton v. Mendoza*, 174 Kan. 468, 471, 257 P.2d 113, 115 (1953). However, the rule only applies when the written contract evidences the final agreement of the parties. *Id.* Exceptions to the rule exist which allow such evidence to show that there had been misrepresentations or concealments as to what the contract contained or to show mutual mistake or fraud. *Id.* (citations omitted). In relation to bills of lading, the same general rule applies.

The general rule denying the admissibility of parol evidence to vary written contracts is applicable to the contractual stipulations in a bill of lading.... However, before the rule can be applied, it must appear that the bill of lading was intended by the parties to represent the contract between them, and that all prior negotiations leading up to the issuance of the bill were made in contemplation of its execution; if it should appear that the bill of lading was not intended by the parties to be the contract of carriage, parol evidence is admissible to establish the real contract.

13 Am.Jur.2d *Carriers* § 294 at 795.

■ Plaintiffs' allegations of misrepresentations and the lack of an opportunity to examine the bill of lading are sufficient to raise genuine issues as to whether the bill of lading was intended by the parties to represent the contract of carriage. Similarly, evidence of any alleged prior agreement is clearly admissible to prove plaintiffs' claims of fraud and deceptive practices. Therefore, the defendant is not entitled to summary judgment on this issue.

## II. *Contract Limitations on Damages.*

Even if the bill of lading is the only enforceable contract between the parties, the plaintiffs contend that the provisions which limit defendant's liability for their loss are unenforceable. The bill of lading issued by the defendant and signed by the plaintiff Greg Bailey contained the following two provisions on the face of the document in small print:

NOTICE: THE SHIPPER HEREBY RELEASES THE VALUE OF THE TRAILER AND THE FACTORY INSTALLED EQUIPMENT TO A VALUE NOT EXCEEDING $7,500.00 UNLESS AN EXCESS VALUE IS DECLARED BELOW AND CHARGES FOR SUCH EXCESS VALUE ARE PAID (APPLIES ONLY ON UNITS DESIGNED FOR OTHER THAN LIVING PURPOSES).
NOTICE: THE SHIPPER HEREBY RELEASES THE VALUE OF THE ENTIRE CONTENTS OTHER THAN FAC-

TORY INSTALLED EQUIPMENT TO A VALUE NOT EXCEEDING $250.00 PER SHIPMENT UNLESS AN EXCESS VALUE IS DECLARED BELOW BY SHIPPER AND CHARGES FOR SUCH EXCESS VALUE ARE PAID (APPLIES ONLY ON UNITS DESIGNED FOR LIVING PURPOSES).

The defendant has finally conceded that the $7,500.00 limitation is not applicable in this case to the mobile home since it is a unit designed for living purposes. However, the parties dispute the validity of the $250.00 limitation as it applies to the contents of plaintiffs' mobile home.

The defendant argues that as a common carrier, it can lawfully limit its liability for damage to shipped property through its bill of lading to the "released value" of the property. A common carrier's liability for damages arising from intrastate shipments is governed by state law. The Kansas statute applicable to this issue is K.S.A. 66–304. This section provides, in part:

Any common carrier receiving property for the transportation from one point in this state to another point in this state shall issue a receipt or bill of lading therefor and such carrier ... shall be liable to the owner of such property for any loss, damage or injury caused by ... said carriers, and *no contract, rule or regulation shall exempt any of such common carriers from the liability thereby imposed*....

K.S.A. 66–304 (emphasis added).

■ While the statute clearly prohibits carriers from "exempting" themselves from liability, this has not been read to prohibit all limitations on liability. In *Kennedy v. Atchison, T. & S.F. R.R.*, 104 Kan. 368, 179 P. 314 (1919) [*Kennedy II*], the Kansas Supreme Court interpreted a statute which contained language nearly identical to that found in K.S.A. 66–304. The court held that a carrier's limitation of recovery to an amount on which freight charges were based was not regarded as an "exemption" within the meaning of the statute. *Id.* at 369, 179 P. at 317. In making this decision, the court relied on the

similar language found in the federal Carmack Amendment. The court reasoned that the state statute was intended to make the rule for local shipment conform with the federal law regulating interstate carriers. *Id.* This issue has not been directly addressed by the Kansas appellate courts since that time. However, a recent case discussed the requirements of the Carmack Amendment as applied to interstate carriers. *First Nat'l Bank v. Bankers Dispatch Corp.*, 221 Kan. 528, 562 P.2d 32 (1977). That case contained dicta by the Kansas Supreme Court that "a common carrier transporting property in *intrastate* commerce is prohibited from limiting its liability by contract. (K.S.A. 66–304.)" *Id.* at 533, 562 P.2d at 38. In *Bankers Dispatch*, the court did not mention the holding in *Kennedy*, nor was there any indication that the court intended to overrule *Kennedy*. Therefore, the court finds that K.S.A. 66–304 does not prohibit a carrier from limiting its liability for goods shipped to an amount based on the freight charges.

However, while an intrastate carrier may limit its liability in specific circumstances under K.S.A. 66–304, that alone does not establish that defendant has effectively limited its liability in this case. The *Kennedy II* case provides little guidance as to what is required for a carrier to effectively limit its liability. However, the court notes that in *Kennedy v. Atchison, T. & S.F. R.R.*, 104 Kan. 129, 179 P. 314 (1919) [*Kennedy I*], the court relied not only on the Carmack Amendment, but also on 10 C.J. 399, which reads:

> *If the parties have agreed on a valuation,* as for instance, where the shipper, in compliance with a regulation requiring the value to be stated as a basis for estimating the compensation to be paid, has placed a valuation on the goods, such

valuation will control in an action against the carrier for loss.

10 C.J. 399 (emphasis added). This language indicates that the shipper must knowingly assent to the valuation placed on the shipped property.

For further guidance, the court turns to federal law upon which K.S.A. 66–304 was said to be based. The Carmack Amendment [formerly 49 U.S.C. § 20(11)][1] was originally enacted in 1906 with the prime objective of bringing about uniform rules of responsibility as to interstate commerce and interstate commerce bills of lading. *Atchison, T. & S.F. R.R. v. Harold,* 241 U.S. 371, 378, 36 S.Ct. 665, 668, 60 L.Ed. 1050 (1916). A body of law has developed under the provisions of the Carmack Amendment on the issue of the shipper's assent to a carrier's limited liability. The Carmack Amendment required that the released value of the property shipped be "agreed upon in writing."[2] It has been held that for assent to a released value to be effective under section 20(11), the shipper must be given "a fair opportunity to choose between the higher or lower liability by paying a correspondingly greater or lesser charge." *New York, N.H. & H.R.R. v. Nothnagle,* 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953). Many courts have held that any limitation on liability must be brought to the attention of the shipper and the shipper must be given a meaningful choice to contract with or without the limitation on liability. *Holmes v. National Van Lines,* 55 Wash.2d 861, 350 P.2d 864 (1960); *see also Cordingley v. Allied Van Lines,* 413 F.Supp. 1398 (D.Mont.1976) (liability not limited where shipper was not advised of provision excluding liability for articles of extraordinary value nor given an opportunity to declare a higher value); *Hogan Transfer & Storage Corp. v. Waymire,* 399 N.E.2d 779

---

**1.** After substantial revisions of the Interstate Commerce Act in 1978, the provision which allows a carrier to limit its liability to a released value is found at 49 U.S.C. § 10730.

**2.** 49 U.S.C. § 20(11) read, in part: *"Provided however,* That the provisions hereof respecting liability for full actual loss, damage, or injury

... shall not apply ... to property ... which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property...." *Id.*

(Ind.App.1980) (common law and statute requires choice of rates with opportunity to purchase greater protection by paying higher rate); *Semi-Metals, Inc. v. Pinter Bros.*, 70 N.J. 437, 360 A.2d 385 (1976) (limit on liability ineffectual when contained only in a filed tariff or in a bill of lading not received or agreed to by shipper); *Yellow Freight Sys., Inc. v. North Am. Cabinet Corp.*, 670 S.W.2d 387 (Tex. Civ.App.1984) (there must be an absolute, deliberate, and well-informed choice by shipper, and reasonable notice is necessary to provide shipper with genuine opportunity to choose between higher and lower rates).

■ Even if plaintiffs signed the bill of lading, that alone would be insufficient to constitute a valid assent. It has been held that a shipper should agree to the released value "in the same sense that one agrees or assents to enter into a contractual obligation." *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129, 135 (4th Cir. 1967). However, because of the strong public policy expressed at common law and in section 20(11), which generally impose strict liability on common carriers, principles of contract law should not be strictly applied in cases involving limitations on liability when questions of fraud or mistake are raised by the shipper. *Id.*

Defendant contends that plaintiffs cannot challenge the provisions of the bill of lading since shippers are presumed to have knowledge of schedules contained in a carrier's tariffs. After passage of the Carmack Amendment, both shippers and carriers were chargeable with knowledge of the contents of the schedules filed with the Interstate Commerce Commission. Furthermore, they were conclusively presumed to have contracted according to the tariff schedules in respect to rates and liability. *Atchison, T. & S.F. R.R. v. Robinson*, 233 U.S. 173, 34 S.Ct. 556, 58 L.Ed. 901 (1914). However, after the 1915 Cummins Amendment, contractual limitations of liability were closely circumscribed and valuations in writing by the shipper were a condition precedent to valid limitations agreements.

*Caten v. Salt City Movers & Storage Co.*, 149 F.2d 428, 431 (2d Cir.1945). Therefore, this presumption of knowledge of tariff schedules does not overcome the Carmack Amendment's requirement of an "agreement" on valuation of shipped property. *See Trans-American Van Service, Inc. v. Shirzad*, 596 S.W.2d 587, 590 (Tex.Civ.App. 1980). The requirement of an opportunity to choose between variant rates on which limitations of liability are based has been seen as an exception to the presumption. *Resolute Ins. Co. v. Morgan Drive-Away, Inc.*, 403 S.W.2d 913, 915–16 n. 1 (Mo.App. 1966). To properly limit its liability, the carrier must do more than merely show it maintained the appropriate tariff schedules. *Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103, 108 (1st Cir.1978).

Furthermore, the doctrine that shippers are presumed to contract according to tariff schedules is difficult to reconcile with common law rules which allowed agreed value arrangements. *See, e.g., Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *Hart v. Pennsylvania R.R.*, 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717 (1884). Even at common law, these agreements had to be freely and fairly made and the shipper had to be given real freedom of choice between rates. *Atchison, T. & S.F. R.R. v. Dill*, 48 Kan. 210, 212, 29 P. 148 (1892); *see also Union Pac. R.R. v. Burke*, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656 (1921); *Muelder v. Western Greyhound Lines*, 8 Cal.App.3d 319, 325, 87 Cal.Rptr. 297, 301 (1970).

This court recognizes that these interstate commerce cases are based on language of the Carmack Amendment which is not found in K.S.A. 66–304. However, the court is of the opinion that the Kansas appellate courts, if faced with this issue, would impose a similar requirement that the shipper be given a meaningful opportunity to choose between higher or lower liability. This opinion is based on several reasons. First, Kansas law reflects strict adherence to the common carrier's status as a bailee, with the accompanying liability as an insurer. *Nolan v. Auto Transport-*

*ers,* 226 Kan. 176, 597 P.2d 614 (1979). Furthermore, common law seems to indicate that some type of real choice must be given to shippers for carriers to be able to effectively change their insurer status. *Dill,* 48 Kan. at 212, 29 P. 148. Finally, the language in *Kennedy I* and *Kennedy II* clearly indicated that the language present in K.S.A. 66–304 was intended to conform intrastate law with the requirements of the Carmack Amendment, which clearly requires a meaningful choice in contracting for released values.

■ There are genuine issues existing as to whether the defendant effectively limited its liability through the bills of lading issued to the plaintiffs. Plaintiffs' affidavit clearly raises the question of whether they were informed that they could declare a higher value in order to increase the carrier's liability for the contents above $250.00. The affidavit also raises questions of whether plaintiffs were given an opportunity to discover for themselves that the carrier had limited liability unless they declared a higher value. Furthermore, the defendant has not denied these allegations. For these reasons, the defendant is not entitled to summary judgment limiting its liability to the released value of $250.00 for the contents of the mobile home as preprinted in the bill of lading.

■ The defendant also argues that as a matter of law, it is not liable for any consequential damage to or diminuation in value of the undamaged one-half section of the plaintiffs' mobile home. The defendant relies on section 1(g) of the contract terms on the back of the bill of lading. Section 1(g) provides:

> No carrier or party in possession shall be liable for any diminuation of value of any units, section, or components not directly damaged but merely consequentially damaged or reduced in value as a result of direct and or physical damage to a related unit, section, or component of a larger unit or complex.

K.S.A. 66–304 imposes liability on an intrastate carrier for "any loss, damage or injury." According to its provisions, a carrier cannot exempt itself from that liability by contract. As discussed above, the only recognized exception is when the limitation of liability is the amount on which the freight charges are based. There is no indication from that bill of lading that the plaintiffs could avoid this limitation by declaring a higher released value. Clearly, section 1(g) is an attempt by the defendant to exempt itself from liability for consequential damages and is not based on a "released value" mechanism allowed by *Kennedy I* and *Kennedy II.* In addition, the similar language in the Carmack Amendment[3] has been interpreted to subject the carrier to liability for all costs which are the "natural and probable consequence of the damages done to the [shipped property]." *Reed v. Aaacon Auto Transport, Inc.,* 637 F.2d 1302, 1306–07 (10th Cir.1981). Therefore, the court comes to the conclusion that section 1(g) is a violation of K.S.A. 66–304 and is therefore unenforceable.

### III. *Estoppel Claim.*

Count III of plaintiffs' complaint alleges that the defendant should be estopped from denying full liability for the damages due to the alleged misrepresentations made by defendant's agent that all the contents of the mobile home would be insured.

■ The elements of estoppel are well established under Kansas law. To state a claim for estoppel, the party must show (1) a false representation or concealment of material facts; (2) that the representation was made with knowledge, actual or constructive, of the facts; (3) that the party to whom the representation was made was without knowledge or means of knowing the real facts; (4) that the representation was made with the intention that it would be acted upon; and (5) that the party to whom it was made relied on or acted upon the representation to his prejudice. *Place*

---

**3.** "Any common carrier ... shall be liable to the lawful holder [of a receipt or bill of lading] for any loss, damage, or injury to such caused by it...." 49 U.S.C. § 20(11).

*v. Place,* 207 Kan. 734, 739, 486 P.2d 1354, 1358–59 (1971).

Defendant contends that there is no basis in the existing record to infer that the alleged representations made by the terminal agent were made with the intention that they would be relied upon. However, the question of motive or intent is generally an inappropriate issue for summary judgment. *Brick v. City of Wichita,* 195 Kan. 206, 211, 403 P.2d 964, 969 (1965). At this time, there are questions of material fact remaining on this issue. From the allegations found in plaintiffs' petition, it is possible for the jury to infer that the agent intended the plaintiffs to rely on her statements and that the statements were made in order to secure the plaintiffs' business.

Defendant also contends that it is entitled to summary judgment on the estoppel claim since the plaintiffs' allegations show that as a matter of law the plaintiffs did not justifiably or reasonably rely on the alleged misrepresentations. This contention is based on the argument that the plaintiffs are estopped to deny the validity of the bill of lading because they signed it without reading it. As discussed earlier, plaintiffs have stated sufficient allegations to preclude summary judgment on the validity of the written contract. Therefore, summary judgment is denied on this claim.

## IV. *Fraud Claim.*

Since defendant's motion for summary judgment on the fraud claim is based on the same arguments discussed above, the court denies defendant's motion for the same reasons.

## V. *Applicability of the Kansas Consumer Protection Act.*

Count V of plaintiffs' petition alleges that the defendant engaged in deceptive and unconscionable acts and practices in violation of the Kansas Consumer Protection Act, K.S.A. 50–623 *et seq.* [hereinafter the KCPA or the Act]. The KCPA was designed to protect consumers from suppliers who commit deceptive and unconscionable acts and from unbargained for warran-

ty disclaimers. The Act should be construed liberally to promote these policies. K.S.A. 50–623(b), (c). The Act applies to any consumer transaction which is defined as the "sale, lease, assignment or other disposition for value of property or services within this state … to a consumer or a solicitation by a supplier with respect to any of these dispositions." K.S.A. 50–624(c). Clearly, the intrastate transportation of property is a service within this broad definition.

However, the KCPA's prohibitions only apply to "suppliers." The Act defines a supplier as "a manufacturer, distributor, dealer, seller, … or other person who, in the ordinary course of business solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer." K.S.A. 50–624(i). Defendant does not contend that it is not a supplier as defined by the KCPA.

While the terminology of the KCPA is extremely broad, it does not apply to all consumer transactions. The 1973 comments following K.S.A. 50–624 indicate that "[t]he only consumer transactions not covered by [the KCPA] are insurance contracts and securities." The legislature's reasons for exclusion of these transactions were based on existing statutes which adequately dealt with insurance fraud and securities fraud. *See* K.S.A. 50–624, Kansas Comment, subsection (c) (1973). In addition, the Kansas Supreme Court has held that the KCPA was inapplicable to landlord-tenant transactions which fell under the purview of the Residential Landlord-Tenant Act. *Chelsea Plaza Homes, Inc. v. Moore,* 226 Kan. 430, 434, 601 P.2d 1100, 1104 (1979). In *Chelsea,* the court emphasized that the landlord-tenant act was "complete within itself." *Id.* Furthermore, the court noted the inherent conflict between the remedial provisions of the two Acts. The landlord-tenant act allowed recovery only of actual damages. On the other hand, the KCPA permitted recovery of actual damages or $2,0000.00, whichever was greater. *Id.* at 432, 601 P.2d at 1102. The court held that "where there is a *con-*

*flict* between a statute dealing generally with a subject and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case." *Id.* (emphasis added).

 The defendant contends that since intrastate common carriers are subject to heavy regulation by the Kansas Corporation Commission, the KCPA is "preempted" under the reasoning of *Chelsea.* However, the court finds this argument to be without merit. First, K.S.A. 66–304 clearly states "that nothing in this section shall deprive any owner of such property ... of any remedy or right of action which he has under existing law." In addition, K.S.A. 66–178 allows individuals to bring suit against carriers for violation of the regulatory laws. When such a suit is filed, the individuals may join in the same petition as many different causes of action as they may have against the carrier. K.S.A. 66–179. These provisions clearly indicate that the regulatory laws were not intended to "preempt" other remedies provided by state law. Similarly, the court finds no inherent conflict between the KCPA and the regulatory laws found in Chapter 66 of the Kansas statutes. The mere fact that carrier's tariffs, rates and bills of lading are approved by the Kansas Corporation Commission does not give the carrier license to commit deceptive and/or unconscionable acts. Since the KCPA is to be construed liberally to promote protection of consumers, *Willman v. Ewen,* 230 Kan. 262, 267, 634 P.2d 1061, 1064 (1981), the court concludes that the KCPA is applicable to these facts.

 The defendant also argues that as a matter of law, it has not committed any deceptive or unconscionable act. Pursuant to K.S.A. 50–626, the issue of whether a deceptive act has been committed is a question for the jury to determine. *Waggener v. Seever Sys., Inc.,* 233 Kan. 517, 524, 664 P.2d 813, 818 (1983). Defendant bases its motion on the same arguments that it made on the estoppel and fraud issues. Since the court has already ruled that genuine issues of material fact remain, the court finds

that summary judgment is improper on this issue.

The question of whether an act is unconscionable under the KCPA is a question reserved to the court pursuant to K.S.A. 50–627. Because the facts of this case are disputed by the parties, the court declines to rule on this issue at this time.

For all the foregoing reasons, the court denies defendant's motion for summary judgment in its entirety.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is denied.