**Susan SKEET, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**SEARS, ROEBUCK & CO., and, Gates City Optical of Missouri, Inc., Defendants.**

Civ. A. No. 87–4254–S.

United States District Court, D. Kansas.

April 8, 1991.

Tom. C. Kelley, Ochs and Kelley, P.A., Topeka, Kan., plaintiff.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendants.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on defendants' motion to dismiss plaintiff's civil RICO claims (Doc. 102) and defendants' motion for partial summary judgment (Doc. 119).[1]

---

**1.** Additionally, defendant Things Remembered, Inc. has moved for summary judgment on plaintiff's claims against it (Doc. 104). The court finds that the motion of Things Remembered,

This action arises out of the defendants' sale of contact lenses to plaintiff Susan Skeet ("Skeet") on four different occasions (1980, 1982, 1984, and 1985). Skeet alleges that defendants Sears, Roebuck & Co. and Gates City Optical of Missouri, Inc. ("defendants" or "Sears" and "Gates") dispensed contact lenses to her without a proper contact lens prescription in violation of Kansas and federal law. Specifically, plaintiff alleges that defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50–623 *et seq.*, and the Kansas Optometric Act ("KOA"), K.S.A. 65–1501 *et seq.* Skeet further alleges that defendants are liable to her for negligence. Plaintiff seeks declaratory and injunctive relief and damages.

The undisputed facts in this case are as follows. On July 21, 1980, plaintiff Susan Skeet, then Susan Hart, purchased contact lenses through Gates City Optical of Missouri, Inc. (Gates). To purchase her contact lenses, Skeet gave defendants a prescription which she had received following a complete eye examination performed by Dr. Darrel Smith, an optometrist. Over the next five years Skeet purchased contacts from defendants on three different occasions. To conduct these purchases, Skeet telephoned defendants' dispensary and stated that she would like to order replacement lenses. On these three occasions, defendants dispensed contact lenses without plaintiff having given defendants a new prescription or a copy of her 1980 prescription. In 1986, Skeet began to suffer from headaches, eye irritation, and extreme sensitivity to light. Skeet was then examined by optometrist Dr. Carriger. Dr. Carriger informed Skeet that her difficulties were the result of the formation of scar tissue or neovascularization of the cornea. Dr. Carriger further informed Skeet that her condition may be the result of wearing contact lenses which do not fit properly.

Plaintiff contends that the defendants were negligent and violated Kansas law in dispensing contact lenses without a valid contact lens prescription. Plaintiff contends that defendants committed deceptive and unconscionable acts in violation of the KCPA. Specifically, plaintiff contends that she was given a prescription for eye glasses which she then took to defendants' dispensary. Plaintiff further alleges that defendants negligently and unlawfully dispensed contact lenses using an eye glass prescription in violation of Kansas law. Plaintiff contends that defendants' use of the mails and wires in conducting the sale of contact lenses constitutes racketeering activity in violation of RICO. Conversely, defendants contend that they dispensed contact lenses to plaintiff using a valid contact lens prescription obtained by plaintiff from Dr. Darrel Smith. The actual prescription at the center of this dispute apparently no longer exists. Defendants further contend that any injuries plaintiff may have suffered were not proximately caused by defendants' alleged negligent conduct. Instead, defendants allege any neovascularization or scarring of the plaintiff's cornea is the result of plaintiff's own negligence in caring for her lenses or failing to replace old or worn out lenses.

*Plaintiff's RICO claim*

Defendants have moved to dismiss, or in the alternative, for summary judgment on Skeet's claim under RICO. The court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Mangels v. Pena*, 789 F.2d 836, 837 (10th Cir.1986). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled

Inc. is moot inasmuch as Things Remembered,

Inc. has been dismissed from this action.

to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Further, a moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

In her complaint, plaintiff has alleged that defendants have engaged in mail and wire fraud and that by committing a series of such offenses, defendants have engaged in a pattern of racketeering activity for which they are liable to plaintiff under 18 U.S.C. § 1962. Specifically, plaintiff alleges that defendants have utilized both the mails and wires to carry out their fraudulent scheme to sell her contact lenses without a valid contact lens prescription.

The court finds that dismissal of plaintiff's RICO claim is warranted because plaintiff has failed to identify any person who is separate and distinct from the alleged racketeering enterprise as required by the express terms of RICO. Further, the court finds that because its findings are based upon consideration of matters outside the pleadings, defendants are entitled to summary judgment on plaintiff's RICO claim.[2] Fed.R.Civ.P. 12(b). While it is unclear from plaintiff's complaint which subsection of § 1962 she is proceeding under, it appears that plaintiff is alleging that defendants have violated 18 U.S.C. § 1962(c).[3] Title 18, Section 1962(c) of the United States Code prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Thus, in order to assert a civil RICO claim under § 1962(c), plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir.1989). "Racketeering activity" is defined as "any act ... which is indictable under any of the following provisions of title 18, United States Code ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...." 18 U.S.C. 1961(1).

---

**2.** The court notes that plaintiff has had an opportunity to respond to defendants' contentions in its responsive pleading to defendants' motion for partial summary judgment.

**3.** The court notes there are no allegations which would bring plaintiff's claim within the ambit of 18 U.S.C. § 1962(a) and (b). These subsections prohibit the acquisition or maintenance of control of an enterprise through a pattern of racketeering activity. *See N.L. Indus., Inc. v. Gulf & Western Indus., Inc.*, 650 F.Supp. 1115, 1127–28 (D.Kan.1986). Further, it is extremely unlikely that plaintiff would have standing to bring claims under § 1962(a) or (b).

■ The court finds that plaintiff has failed to allege the existence of an "enterprise" separate and distinct from the persons or defendants alleged to have violated § 1962(c). Plaintiff contends that the enterprise in this case is made up of the two defendants joined together in an affiliation to carry out racketeering activity. The court finds that the enterprise which plaintiff alleges does not exist separate from the corporate defendants which are alleged to have conducted a pattern of racketeering activity. The court further notes that courts generally have held that under § 1962(c), the person and the enterprise must be distinct. *Smith v. MCI Telecommunications Corp.*, 678 F.Supp. 823, 827 (D.Kan.1987) (citations omitted). Moreover, the Tenth Circuit Court of Appeals has recognized that a corporation cannot be both an "enterprise" and a "person" within the meaning of the § 1962(c). *Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir.1987); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1150 n. 2 (10th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). Thus, a corporation which is conducting its own affairs through an alleged pattern of racketeering activity falls outside "the ambit of § 1962(c)." *Id.* In accordance with the above authority, the court finds that plaintiff's RICO claim must fail. Further, the court finds that plaintiff's failure to allege the existence of such enterprise results from the fact that no "enterprise" exists separate and distinct from the named defendants. Thus, the court finds that defendants are entitled to summary judgment on plaintiff's RICO claim and accordingly will grant defendant's motion for partial summary judgment on Count V of plaintiff's third amended complaint.

■ Even if plaintiff had sufficiently alleged facts which support the existence of an "enterprise" separate and distinct from the persons alleged to have violated RICO, the court finds that plaintiff has failed to sufficiently plead the predicate acts of mail and wire fraud with the requisite degree of particularity mandated by Rule 9(b) of the Federal Rules of Civil Procedure. Thus, plaintiff's complaint fails to allege a "pattern of racketeering activity." Rule 9(b) of the Federal Rules of Civil Procedure provides in relevant part: "[i]n all averments of fraud or mistake, the *circumstances* constituting fraud or mistake shall be stated with particularity." (emphasis added). Generally, to satisfactorily aver the "circumstances constituting fraud" courts have required the complaint to state the "time, place and contents of false representations," as well as "identify the person making the representations and what was obtained or given up thereby." *N.L. Indus., Inc.*, 650 F.Supp. at 1126–27 (quoting *Eaby v. Richmond*, 561 F.Supp. 131, 136 (E.D.Pa.1983)). *See also Cayman Exploration Corp.*, 873 F.2d at 1362; *Meyer v. Cloud County Bank & Trust*, 647 F.Supp. 974, 975–76 (D.Kan.1986). The purpose of such a requirement is to give the defendants "notice of the precise misconduct or fraudulent acts being claimed." *Van Dorn Co., Cent. States Can Co. Div. v. Howington*, 623 F.Supp. 1548, 1557 (N.D. Ohio 1985).

While it is apparent that plaintiff claims that defendants sold her contact lenses without a valid contact lens prescription, plaintiff has failed to aver with particularity the actual content of the alleged false representations, as well as the identity of the person making such representations. Moreover, the time of the misrepresentation is not pled with particularity. Indeed, the plaintiff avers that she telephoned defendant during 1983, and that shortly thereafter she received notice in the mail. Plaintiff further avers that "in 1985 the plaintiff again lost a lens and telephoned the optical department at Sears and ordered a replacement over the phone." The court finds that such averments are insufficiently pled under Rule 9(b), and thus, dismissal would be warranted on this basis.

*Plaintiff's Kansas Consumer Protection Act Claim*

■ Plaintiff alleges in count VI of her third amended complaint that defendants have violated the Kansas Consumer Protection Act, K.S.A. 50–623 *et seq.* Plaintiff specifically contends that defendants have committed deceptive acts and practices by

selling contact lenses to her without a valid contact lens prescription thereby committing violations of K.S.A. 50–626(b)(1), (2) and (3) and K.S.A. 50–627(b)(1) and (6). Defendant has moved for summary judgment on plaintiff's claim under the KCPA.

Initially, defendants contend that they are entitled to summary judgment as a matter of law on plaintiff's claim under the KCPA because the act does not apply to this case. Instead, defendants contend that the KCPA is preempted by the applicability of more specific statutory provisions, *i.e.,* the Kansas Optometric Act, K.S.A. 65–1501 *et seq.* ("KOA") which regulates defendants' conduct. In support, defendants cite *Chelsea Plaza Homes, Inc. v. Moore,* 226 Kan. 430, 601 P.2d 1100, 1104 (1979) in which the Kansas Supreme Court held that the more general provisions of the KCPA are preempted by the Residential Landlord Tenant Act ("RLTA"), K.S.A. 58–2540 *et seq.* The *Chelsea Plaza Homes, Inc.* court stated:

> [c]learly, the Consumer Protection Act covers a very broad area of transactions; whereas, the Residential Landlord and Tenant Act covers one very specific small area of transactions, and is complete within itself for that area. We therefore must conclude that for all transactions within its purview the Residential Landlord and Tenant Act controls and preempts the field.

*Id.,* 601 P.2d at 1104. There are no Kansas cases which discuss the relationship between the KCPA and the KOA. However, the court finds guidance in the Kansas court's previous rulings. The Kansas Supreme Court has previously stated that "[i]t is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it." *State ex rel. Mellinger v. Throckmorton,* 169 Kan. 481, 219 P.2d 413, 417 (1950). Thus, in order for a state statute to dis-

place another statute, it must be specific and "complete in [itself]."

The court finds that unlike the RLTA, the KOA is not "complete in [itself]." In contrast to the KOA, the RLTA completely regulates transactions between landlords and tenants. When enacting the RLTA, "the legislature set forth the obligations, rights, and remedies of both landlords and tenants.... [In addition, the] legislature considered the concerns and recommendations of both landlords and tenants in drafting a law which attempts to strike a reasonable balance between the positions advocated by the two groups." *Chelsea Plaza Homes, Inc., Id.,* 601 P.2d at 1103 (quoting *Clark v. Walker,* 225 Kan. 359, 590 P.2d 1043 (1979)). Thus, the complete transaction between landlords and tenants is regulated by the RLTA. In contrast, the Kansas Optometric Act is a specific act which regulates the practice of optometry and establishes the requisite standard of care owed by those who practice optometry. *See* K.S.A. 65–1501 *et seq.* However, the Kansas Optometric Act does not address the "rights and remedies" of those who may be injured by violations of the Kansas Optometric Act. Thus, while the Kansas Optometric Act imposes a civil penalty for those who dispense lenses without a proper prescription under K.S.A. 65–1513, it does not provide a remedy to those who may be injured by violations of the KOA. Accordingly, this court does not believe that the Kansas courts would find the Kansas Consumer Protection Act to be displaced by the Kansas Optometric Act. *Chelsea Plaza Homes, Inc.* was a unique case in which the plaintiff could recover alternatively under the KCPA or the RLTA.[4] Thus, the court will deny defendants' motion for summary judgment on plaintiff's claim that defendants have violated the provisions of the KCPA.

■ Defendants additionally contend that they are entitled to summary judgment on plaintiff's claim for civil penalties under the KCPA because plaintiff's claim

---

**4.** The court further notes that the KCPA is to be construed liberally to protect consumers from suppliers who commit deceptive and uncon-

scionable practices. K.S.A. 50–623. Thus, application to the facts of this case would advance the policies of the KCPA.

was not filed within one year of the alleged violation of the KCPA. Therefore, defendants assert pursuant to K.S.A. 60–514(3), plaintiff's claim for recovery of a penalty under the KCPA is time-barred. In support, defendants cite *Agristor Leasing v. Meuli,* 634 F.Supp. 1208, 1218 (D.Kan. 1986), in which Judge Kelly of this District applied the one-year statute of limitations to a claim for a civil penalty under the KCPA pursuant to K.S.A. 60–514(3), and a three year statute of limitations for a claim for damages under the KCPA pursuant to K.S.A. 60–512(2).

The court respectfully declines to follow *Agristor Leasing* inasmuch as that decision was rendered prior to *Haag v. Dry Basement, Inc.,* 11 Kan.App.2d 649, 732 P.2d 392, 395 (1987). In *Haag,* the Kansas Court of Appeals discussed the applicable statute of limitations for claims brought under the KCPA. In ascertaining which statute of limitations applied, the court recognized that the appropriate inquiry is the *"nature* of the right which has been injured and not the *remedy* therefor." *Id.* 732 P.2d at 394 (citing *Holley v. Coggin Pontiac, Inc.,* 43 N.C.App. 229, 259 S.E.2d 1, *cert. denied,* 298 N.C. 806, 261 S.E.2d 919 (1979). Accordingly, the Kansas Court of Appeals held that an action brought under the KCPA was an action to recover upon a liability created by statute. *Id.* Thus, the court held the applicable statute of limitations is three years as provided by K.S.A. 60–512(2) which requires that an action for recovery upon a liability created by statute be brought within three years. Accordingly, the court will deny defendants' motion for partial summary judgment on plaintiff's claim to recover civil penalties under the KCPA for violations which occurred more than one year prior to the filing of plaintiff's complaint on September 18, 1987.

IT IS BY THE COURT THEREFORE ORDERED that the motion of defendants Sears, Roebuck and Co., and Gates City Optical of Missouri for partial summary judgment is granted in part and denied in part, consistent with the above memorandum and order.