(211 P.3d 161)
No. 100,221

IN THE MATTER OF THE APPLICATION OF GRACIOUS PROMISE FOUNDATION FOR EXEMPTION FROM AD VALOREM TAXATION IN WYANDOTTE COUNTY, KANSAS.
Petition for review granted May 19, 2010

This court's unpublished opinion filed on April 17, 2009 is withdrawn. Opinion filed June 19, 2009.

*Matthew S. Walsh*, of Shook, Hardy & Bacon L.L.P., of Kansas City, Missouri, for appellant.

No appearance by appellee.

Before MCANANY, P.J., MARQUARDT and MALONE, JJ.

MARQUARDT, J.: The Gracious Promise Foundation (Foundation) appeals the denial of its application for ad valorem tax ex-

emption by the Board of Tax Appeals (BOTA). We affirm. This court's unpublished opinion filed on April 17, 2009, is withdrawn.

The Foundation is a Kansas nonprofit Internal Revenue Code Section 501(c)(3) corporation that operates 13 programs designed to reduce criminal offender recidivism. See 26 U.S.C. § 501(c)(3) (2006).

The Foundation began a program called Grandma's House designed to provide 24-hour care for children of incarcerated mothers. At the child's birth, a Grandma's House volunteer is present and takes custody of the child. The volunteer then makes daily visits to the correctional facility with the child, which allows the incarcerated mother to breast feed, change diapers, and otherwise care for the child in a supervised atmosphere.

Three lots in Wyandotte County were donated by various businesses and individuals in March 2004 to the Foundation for the future site of a house for the Grandma's House program. 1st Choice Builders, LLC, agreed to build the house as a charitable donation to the Foundation. However, before the bank would loan the money for the construction, the bank required that the property be deeded to 1st Choice Builders so the bank could perfect a security interest in the property. The Foundation quitclaimed the property to 1st Choice Builders on October 26, 2004.

1st Choice Builders completed construction of the house in March 2005 and deeded the property back to the Foundation on July 10, 2006.

On May 25, 2007, the Foundation applied for tax exemption for the three lots starting on or about April 1, 2005. The county records showed that the Foundation did not own the property until July 12, 2006. The Foundation, on its application, was asked to "[i]ndicate which statute authorizes the exemption." The Foundation responded, "501(c)(3) -attached." It cited no Kansas statute authorizing its request for tax exemption.

On September 5, 2007, BOTA denied the Foundation's application. Applying K.S.A. 79-201b *Third*, BOTA held that the Foundation failed to satisfy the statute's requirements because the Foundation failed to: (1) Provide evidence that it operated a *licensed* private children's home; (2) inform BOTA of the terms of

the occupancy of individuals living at the residence; and (3) explain why all three lots required tax exempt status because the house was located on only one lot.

The Foundation filed a petition for reconsideration on September 21, 2007, again citing 501(c)(3) as the statute that authorizes its exemption and claiming that K.S.A. 79-201b *Third* was inapplicable. The Foundation argued that BOTA should have reviewed the Foundation's application under K.S.A. 79-201 *Second* or K.S.A. 79-201 *Ninth*. The Foundation conceded that it did not meet the definition of a "private children's home," as defined by K.S.A. 75-3329, and consequently, BOTA should not have applied that statute to determine whether its property was tax exempt.

BOTA granted the Foundation's petition for reconsideration and directed the Foundation to provide more detailed information about "the uses of the subject real property, including how the Grandma's House program operates, the terms of occupancy by the resident director, whether any adults reside at the subject property as their sole residence, whether any other children or family members reside at the property, etc."

BOTA held a hearing on November 16, 2007. The Foundation's executive director, Shirley Miller, testified regarding the use of the real property, the Grandma's House program, and the current Grandma's House occupants and volunteers. BOTA asked for supplemental information about the ownership history of the property.

In its order on reconsideration, BOTA denied the tax exemption for the real property. Relying on *In re Tax Exempt Application of Johnson County Housing Coalition, Inc.*, 29 Kan. App. 2d 322, 26 P.3d 1279 (2001) (*JCHC*), BOTA determined that K.S.A. 79-201b *Third* was the more specific statute and therefore, the proper statute for reviewing the Foundation's application for tax exempt status. BOTA further determined that the Foundation was not the owner of the property from October 26, 2004, through July 10, 2006, and that 1st Choice Builders did not use the property solely for K.S.A. 79-201b *Third* purposes.

BOTA also found that the first child arrived at Grandma's House in December 2005; however, due to licensing and custody issues, there has been no child residing in the home since April 2007.

During this time, the director's duties focused on reviewing Grandma's House policy and procedure, creating community interest, and speaking with donors.

As in its original order, BOTA held that the Foundation did not meet the definition of "private children's home" as defined by K.S.A. 75-3329(d) and failed to provide an explanation as to why the two adjacent lots qualified for tax exempt status. Citing these statutory deficiencies, BOTA held that the Foundation did not meet the requirements of K.S.A. 79-201b *Third* and denied the Foundation's application.

On appeal, the Foundation claims that BOTA applied the wrong statute and should have examined its application under K.S.A. 79-201 *Second* or *Ninth*.

BOTA orders are subject to judicial review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*; K.S.A. 74-2426(c). For purposes of this appeal, K.S.A. 77-621(c)(4) requires the appellate court to grant relief if "the agency has erroneously interpreted or applied the law." Resolution of this argument requires interpretation of K.S.A. 79-201b *Third*, 79-201 *Second*, and 79-201 *Ninth*. The interpretation of a statute is a question of law over which this court has unlimited review. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

Our Supreme Court, commenting on review of a BOTA decision has noted:

"In reviewing a BOTA decision, several well-established principles govern. BOTA is a specialized agency and is considered to be the paramount taxing authority in this state. [Citation omitted.] BOTA is a specialized agency that exists to decide taxation issues. [Citation omitted.] Its decisions are given great weight and deference when it is acting in its area of expertise. [Citation omitted.] The party challenging BOTA's decisions has the burden to prove that the action taken was erroneous. [Citation omitted.] However, if BOTA's interpretation of law is erroneous as a matter of law, appellate courts will take corrective steps. [Citation omitted.]" *In re Tax Appeal of ANR Pipeline Co.*, 276 Kan. 702, 709-10, 79 P.3d 751 (2003).

Statutes that impose tax are to be construed strictly in favor of the taxpayer. Tax exemption statutes, however, are to be construed

strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 (2003).

A threshold question here is which statute should be applied in evaluating the tax status of Grandma's House property?

The Foundation relies on *In re Tax Exemption Application of Via Christi*, 27 Kan. App. 2d 446, 6 P.3d 896 (2000), to support its argument. Via Christi Regional Medical Center applied for, but was denied, tax exemption for one of its satellite offices. In denying the application, BOTA held that Via Christi did not satisfy the requirements of K.S.A. 1998 Supp. 79-201b *First* because the subject property did not have a hospital purpose. BOTA noted that the subject property was used as a primary care facility and not a general hospital, as defined by K.S.A. 1998 Supp. 65-425(a), excluding it from tax exemption.

BOTA held that the more generalized statute, K.S.A. 79-201 *Ninth*, did not apply to Via Christi because: (1) Other physicians in the community could offer the same services; (2) Emporia was not a medically underserved community; and (3) Via Christi presented no evidence that it intended to reduce or waive its fees for persons with limited resources.

On appeal, this court reversed BOTA's decision and held that its reasoning was not supported by the evidence. This court determined that BOTA erred by refusing to accept stipulated facts which were supported by the record, namely that Via Christi "was organized for the purpose of providing humanitarian services." 27 Kan. App. 2d at 452. Thus, Via Christi was entitled to claim tax exemption status under K.S.A. 79-201 *Ninth*.

However, in another tax exemption application of a nonprofit section 501(c)(3) corporation, JCHC appealed BOTA's denial of its application for tax exemption for a residential apartment complex that it used predominately for low income housing for handicapped and disabled persons. BOTA determined that although both statutes—K.S.A. 2000 Supp. 79-201b *Fourth* and K.S.A. 2000 Supp. 79-201 *Ninth*—were applicable, the more specific statute, 79-201b *Fourth*, controlled.

On appeal, JCHC claimed that K.S.A. 2000 Supp. 79-201 *Ninth* controlled and BOTA erred by applying K.S.A. 2000 Supp. 79-201b *Fourth*. Similar to the instant case, JCHC conceded that it did not meet the statutory requirements of 79-201b *Fourth*, but claimed that it met the requirements of 79-201 *Ninth*.

Agreeing with BOTA in *JCHC*, this court stated:

"If K.S.A. 2000 Supp. 79-201 *Ninth* controlled, there would be virtually no purpose for any section of K.S.A. 2000 Supp. 79-201b. All exemptions listed in K.S.A. 2000 Supp. 79-201b can necessarily be classified as humanitarian activities. When a conflict exists between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless the legislature intended to make the general act controlling. [Citation omitted.] K.S.A. 2000 Supp. 79-201 *Ninth* deals generally with providing humanitarian services while K.S.A. 2000 Supp. 79-201b *Fourth* refers specifically to low income residential housing." 29 Kan. App. 2d at 326.

K.S.A. 79-201 *Second* provides that "[a]ll real property, and all tangible personal property, *actually and regularly used* exclusively for literary, educational, scientific, religious, benevolent or charitable purposes" shall be exempt from all property and ad valorem taxes. (Emphasis added.)

K.S.A. 79-201 *Ninth* provides that "[a]ll real property and tangible personal property *actually and regularly used* by a community service organization for the predominant purpose of providing humanitarian services" shall be exempt from all property and ad valorem taxes. (Emphasis added.) The statute defines "humanitarian services" as "the conduct of activities which substantially and predominantly meet a demonstrated community need and which improve the physical, mental, social, cultural or spiritual welfare of others or the relief, comfort or assistance of persons in distress or any combination thereof including . . . child care."

K.S.A. 79-201b *Third* allows a tax exemption for:

"All real property, and tangible personal property, *actually and regularly used exclusively for private children's home purposes* by a private children's home as the same is defined by K.S.A. 75-3329, and amendments thereto, which is operated by a corporation organized not for profit under the laws of the state of Kansas . . . used exclusively for children's home purposes." (Emphasis added.)

K.S.A. 75-3329(d) defines a "private children's home" as

"any licensed home, institution or charitable organization which is operated by a corporation organized not for profit under the laws of this state which the secretary finds has and maintains adequate facilities and is properly staffed to provide adequate care, custody, education, training and treatment for any child which the secretary may place therein under the authority of this act."

The Foundation argued that because it does not satisfy the definition of a private children's home, then it "must satisfy another statute authorizing exemption from taxation to enjoy the benefits of such exemption." The Foundation also claimed that it "should not be barred from obtaining exemption from taxation because it does not satisfy an inapplicable statute." Such rationale ignores Kansas law in favor of imposing a tax and against allowing an exemption for one who does not qualify.

In its application for tax exemption, Grandma's House explained all the uses of the property as a "[h]ome for infants born to mothers in the prison system while the mother serves her sentence."

K.S.A. 79-201 *Second* and *Ninth* are general tax exemption statutes, whereas, K.S.A. 79-201b *Third* specifically applies to private children's homes. That is precisely how the Foundation described the use of Grandma's House. The Foundation has failed to prove that 79-201b *Third* should not apply. BOTA did not err in applying 79-201b *Third* to Grandma's House.

K.S.A. 79-201 *Second, Ninth*, and 79-201b *Third* all require the applicant to provide evidence that the property is "actually and regularly used" for the purpose for which the applicant seeks tax exempt status.

Executive Director Shirley Miller testified at the reconsideration hearing that the two lots adjacent to Grandma's House were not being used for any humanitarian purpose because they were "full of rocks and debris from construction." As BOTA noted, the Foundation presented no testimony that would suggest these two undeveloped lots were used "exclusively" for any exempt purpose.

The Foundation fails to explain how the resident director's duties of talking with donors, working with policies and procedures, and visiting churches further Grandma's House's purpose of "actually and regularly" providing child care when it cannot do so without a license. The Foundation's request that its application be

considered under K.S.A. 79-201 *Second* and *Ninth* is without merit because it has not met the "actually and regularly" requirement.

Contrary to the dissent's assertion that BOTA's final order did not consider K.S.A. 79-201 *Second* and *Ninth* in denying Grandma's House's application, BOTA's order stated:

"While the Applicant has requested that the instant tax exemption be examined pursuant to K.S.A. 79-201 *Second* or *Ninth*, the Board finds that K.S.A. 79-201b *Third* is the applicable statute under which the subject real property must be reviewed. The Board finds *In re Johnson County Housing Coalition Inc.*, 29 Kan. App. 2d 322, 26 P.3d 1279 (2001) directly applicable to the instant facts. In *In re Johnson County Housing Coalition Inc.*, the Board denied the tax exemption request for an apartment complex owned by a not-for-profit community housing development organization pursuant to K.S.A. 2000 Supp. 79-201b *Fourth* and K.S.A. 79-201 *Ninth*."

BOTA did not err when it applied K.S.A. 79-201b *Third* to Grandma's House's application for tax exemption.

Affirmed.

MALONE, J., dissenting: I respectfully dissent from the majority's conclusion that the Board of Tax Appeals (BOTA) did not err when it applied K.S.A. 79-201b *Third* to Gracious Promise Foundation's application for ad valorem tax exemption. In my opinion, Grandma's House is not a "private children's home" under K.S.A. 75-3329(d); therefore, K.S.A. 79-201b *Third* does not apply. I agree with Gracious Promise Foundation that the case should be remanded to the agency to consider the application under K.S.A. 79-201 *Second* and *Ninth*.