No. 98,956

IN THE MATTER OF THE APPEAL OF THE MENTAL HEALTH ASSOCIATION OF THE HEARTLAND FOR EXEMPTION FROM AD VALOREM TAXATION IN LEAVENWORTH COUNTY, KANSAS.

(221 P.3d 580)

Opinion filed December 11, 2009.

*Matthew P. Clune,* of Spradley & Riesmeyer, a Professional Corporation, of Kansas City, Missouri, argued the cause and was on the briefs for appellant, and *Frederick H. Riesmeyer, II,* of the same firm, was with him on the supplemental brief.

No appearance by appellee.

The opinion of the court was delivered by

ROSEN, J.: The Mental Health Association of the Heartland (MHAH) is a tax-exempt organization that qualifies for federal income tax exemption under Internal Revenue Code § 501(c)(3), see 26 U.S.C. § 501(c) (2006). It is incorporated as a public-benefit, nonprofit corporation in Missouri. In October 2006, MHAH sought an exemption from ad valorem taxation beginning in the year 2002 on real property that it owns and operates as an apartment building (the Marion Home) for chronically homeless, low-income people who suffer from severe mental handicaps and other

physical disabilities. The building contains a total of 11 apartments, 10 of which are occupied by mentally handicapped residents, with the remaining apartment serving as an office for a full-time residential counselor who provides on-site non-Medicaid/Medicare reimbursable services. A peer support worker also works on-site providing the residents with nonclinical, noncrisis interventions. Collaborative meetings between MHAH staff and other service providers, such as social workers and case managers, occasionally take place on the property.

In order to qualify for apartments at the site, residents must demonstrate that they are homeless and have severe and persistent mental illness. Residents pay a rental fee consisting of no more than 30% of their monthly gross income, in addition to a deposit of $601. Depending on the residents' incomes, the monthly rental fee ranges from $0 to $601. The average monthly rental fee of $234 is below the fair market value. All fees that are collected are applied to operating expenses. The total income from rent and deposits is less than the cost of operating the program and maintaining the property. MHAH receives tax-deductable donations from the United Way, corporate sponsors, the Leavenworth Sisters of Charity, private foundations, and private individuals.

Although the county appraiser recommended that MHAH receive the tax exemption, BOTA denied the application. (The Board of Tax Appeals was supplanted by the State Court of Tax Appeals during the 2008 legislative session. L. 2008, ch. 109, sec. 2; K.S.A. 2008 Supp. 74-2433.) MHAH filed a timely petition for reconsideration, which was also denied. MHAH then took a timely appeal to the Kansas Court of Appeals. The Court of Appeals affirmed the BOTA order in *In re Tax Appeal of Mental Health Ass'n of the Heartland,* 40 Kan. App. 2d 531, 194 P.3d 580 (2008). This court granted MHAH's petition for review.

MHAH asks this court to find that it qualifies for exemption under either K.S.A. 2008 Supp. 79-201 *Second* or *Ninth,* and that K.S.A. 2008 Supp. 79-201b *Fourth* does not operate to bar residential facilities from tax exempt status if those facilities independently qualify under K.S.A. 2008 Supp. 79-201 *Second* or *Ninth.* In order to resolve this issue, we must closely read the three stat-

utory provisions in question and review prior decisions of the Court of Appeals and of this court.

Whether certain property is exempt from ad valorem taxation is a question of law if the facts are not in dispute, but it is a mixed question of law and fact if the facts are controverted. *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 645, 693 P.2d 1187 (1985).

Interpretation of a statute is a question of law over which this court has unlimited review. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009). When courts are called upon to interpret statutes, they begin with the fundamental rule that they must give effect to the intent that the legislature expressed through the plain language of the statute, when that language is plain and unambiguous. See *State v. Valladarez*, 288 Kan. 671, 675-76, 206 P.3d 879 (2009). An appellate court's first task is to ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning. *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). Only if the statutory language is not plain and unambiguous are the courts called upon to resort to canons of statutory construction or consult legislative history. See *Valladarez*, 288 Kan. at 675-76.

Statutes imposing a tax must be interpreted strictly in favor of the taxpayer. However, tax exemption statutes are interpreted strictly in favor of imposing the tax and against allowing an exemption for one that does not clearly qualify. *In re Tax Appeal of Western Resources, Inc.*, 281 Kan. 572, 575, 132 P.3d 950 (2006). Strict construction of an exemption provision does not, however, warrant unreasonable construction. *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, Syl. ¶ 7, 47 P.3d 1275 (2002).

Article 11, § 1(b) (2008 Supp.) of the Kansas Constitution provides:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, merchants' and manufacturers' inventories, other than public utility inventories included in subclass (3) of class 2, livestock, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

Although the legislature may broaden the tax exemption permitted by the Kansas Constitution, it may not limit or curtail the

constitutional provisions. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 853, 473 P.2d 1 (1970).

In *Lutheran Home, Inc. v. Board of County Commissioners*, 211 Kan. 270, 275-79, 505 P.2d 1118 (1973), this court held that a not-for-profit corporation that charged nursing home residents monthly fees that were paid by the residents or by welfare was not acting as a constitutionally exempt "charity" as envisioned by Article 11, § 1(b), of the Kansas Constitution. The court held that "charity involves the doing of something generous for other human beings who are unable to provide for themselves. To have charity there must be a gift from one who has to one who has not. Unless there is a gift, there can be no charity." 211 Kan. at 277. In order to constitute a charity, it must provide a service "free of charge, or, at least, so nearly free of charge as to make the charges nominal or negligible," and the recipients of the charitable service must be "those who are unable to provide themselves with what the institution provides for them." 211 Kan. at 278.

In 1986, the Kansas Legislature amended K.S.A. 79-201 (Ensley 1984) to create the modern version of 79-201 *Second*. L. 1986, ch. 369, sec. 1. The legislature followed that amendment by enacting K.S.A. 79-201 *Ninth* in 1988. L. 1988, ch. 373, sec. 1. These amendments were adopted largely in response to BOTA decisions limiting exempt property to *exclusively* charitable uses and in response to the decision of this court in *Lutheran Home*. See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 754-57, 768, 973 P.2d 176 (1999).

K.S.A. 2008 Supp. 79-201 addresses property used exclusively for certain cultural, religious, and charitable purposes and reads in relevant part:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Second*. All real property, and all tangible personal property, actually and regularly used exclusively for literary, educational, scientific, religious, benevolent or charitable purposes, including property used exclusively for such purposes by more than one agency or organization for one or more of such exempt purposes. Except with regard to real property which is owned by a religious organization, is

to be used exclusively for religious purposes and is not used for a nonexempt purpose prior to its exclusive use for religious purposes which property shall be deemed to be actually and regularly used exclusively for religious purposes for the purposes of this paragraph, this exemption shall not apply to such property, not actually used or occupied for the purposes set forth herein, nor to such property held or used as an investment even though the income or rentals received therefrom is used wholly for such literary, educational, scientific, religious, benevolent or charitable purposes. . . . This exemption shall not be deemed inapplicable to property which would otherwise be exempt pursuant to this paragraph because an agency or organization: (a) Is reimbursed for the provision of services accomplishing the purposes enumerated in this paragraph based upon the ability to pay by the recipient of such services; or (b) is reimbursed for the actual expense of using such property for purposes enumerated in this paragraph; or (c) uses such property for a nonexempt purpose which is minimal in scope and insubstantial in nature if such use is incidental to the exempt purposes of this paragraph; or (d) charges a reasonable fee for admission to cultural or educational activities or permits the use of its property for such activities by a related agency or organization, if any such activity is in furtherance of the purposes of this paragraph. . . . .

"*Ninth.* All real property and tangible personal property actually and regularly used by a community service organization for the predominant purpose of providing humanitarian services, which is owned and operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign not-for-profit corporation if: (a) The directors of such corporation serve without pay for such services; (b) the corporation is operated in a manner which does not result in the accrual of distributable profits, realization of private gain resulting from the payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered or the realization of any other form of private gain; (c) no officer, director or member of such corporation has any pecuniary interest in the property for which exemption is claimed; (d) the corporation is organized for the purpose of providing humanitarian services; (e) the actual use of property for which an exemption is claimed must be substantially and predominantly related to the purpose of providing humanitarian services, except that, the use of such property for a nonexempt purpose which is minimal in scope and insubstantial in nature shall not result in the loss of exemption if such use is incidental to the purpose of providing humanitarian services by the corporation; (f) the corporation is exempt from federal income taxation pursuant to section 501(c)(3) of the internal revenue code of 1986 and; (g) contributions to the corporation are deductible under the Kansas income tax act. As used in this clause, 'humanitarian services' means the conduct of activities which substantially and predominantly meet a demonstrated community need and which improve the physical, mental, social, cultural or spiritual welfare of others or the relief, comfort or assistance of persons in distress or

any combination thereof including but not limited to health and recreation services, child care, individual and family counseling, employment and training programs for handicapped persons and meals or feeding programs."

K.S.A. 2008 Supp. 79-201b relates to certain specialized uses of property and reads in relevant part:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Fourth.* All real property and tangible personal property, actually and regularly used exclusively for: (a) Housing for elderly and handicapped persons having a limited or lower income, or used exclusively for cooperative housing for persons having a limited or low income, assistance for the financing of which was received under 12 U.S.C.A. 1701 *et seq.*, or under 42 U.S.C.A. 1437 *et seq.*, which is operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign, not-for-profit corporation; and (b) for all taxable years commencing after December 31, 2006, temporary housing of 24 months or less for limited or low income, single-parent families in need of financial assistance who are enrolled in a program to receive life training skills, which is operated by a charitable or religious organization; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such a corporation and used exclusively for the purposes of such housing. For the purposes of this subsection, cooperative housing means those not-for-profit cooperative housing projects operating or established pursuant to sections 236 or 221(d)(3), or both, of the national housing act and which have been approved as a cooperative housing project pursuant to applicable federal housing administration and U.S. Department of Housing and Urban Development statutes, and rules and regulations, during such time as the use of such properties are: (1) Restricted pursuant to such act, or rules and regulations thereof; or (2) subject to affordability financing standards established pursuant to the national housing act during such time that such not-for-profit corporation has adopted articles of incorporation or by-laws, or both, requiring such corporation to continue to operate in compliance with the United States department of housing and urban development affordability income guidelines established pursuant to sections 236 or 221(d)(3) of the national housing act or rules and regulations thereof."

BOTA and the Court of Appeals denied MHAH's application because MHAH does not fit all the statutory requirements for residential property exempt status under K.S.A. 2008 Supp. 79-201b *Fourth.* Although it was not disputed that the property was used

for benevolent or charitable purposes under K.S.A. 2008 Supp. 79-201 *Second* and *Ninth*, BOTA and the Court of Appeals concluded that 79-201b is the more specific statute and takes priority over 79-201.

Case law spells out the rule that the more specific statute governs when two statutes are in conflict. "A specific statute controls over a general statute. [Citation omitted.] Likewise, a specific provision within a statute controls over a more general provision within the statute." *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007), *cert. denied* 172 L. Ed. 2d 239 (2008).

"It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it. Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case. [Citations omitted.]" *Chelsea Plaza Homes, Inc. v. Moore*, 226 Kan. 430, 432, 601 P.2d 1100 (1979).

In *In re Tax Exemption Application of Johnson County Housing Coalition, Inc.*, 29 Kan. App. 2d 322, 26 P.3d 1279, *rev. denied* 272 Kan. 1418 (2001), our Court of Appeals first applied this doctrine to charitable property tax exemption statutes. The Johnson County Housing Coalition was a nonprofit community development organization that provided low-income, handicapped, elderly, and special-needs people with housing facilities and services. It applied for exemption under K.S.A. 2000 Supp. 79-201b *Fourth* and K.S.A. 2000 Supp. 79-201 *Ninth*. The Coalition failed to meet the requirements of 79-201b *Fourth*, which provides exempt status to certain housing for low-income residents who qualify under specific federal statutes. In affirming BOTA's denial of the application, the Court of Appeals concluded that 79-201 *Ninth* was not designed to apply to residential housing facilities because it was the more general statute. 29 Kan. App. 2d at 327.

The Court of Appeals has extended this analysis to other sections of the exemption statutes. In *In re Tax Exemption Application of Gracious Promise Foundation*, 42 Kan. App. 2d 180, 211 P.3d 161 (2009), *petition for review filed July 17, 2009*, the court found that the child care facility exemption under K.S.A. 79-201b *Third* was

more specific than and controlled exemptions under K.S.A. 79-201 *Second* and *Ninth*; see also *In re Tax Exemption Application of Inter-Faith Villa*, 39 Kan. App. 2d 810, Syl. ¶ 6, 185 P.3d 295 (2008) (taxpayer requesting statutory tax exemption for property that is primarily low income housing must meet requirements of K.S.A. 79-201b *Fourth*).

Have BOTA and the Court of Appeals properly applied this rule of construction to our tax-exemption statutes? We conclude they have not.

Before looking to rules of construction that might limit the application of a statute, this court looks to the plain language of the statute:

"The fundamental rule of statutory interpretation is that a court must give effect to the intent of the legislature as expressed. Thus, when the language of a statute is plain and unambiguous, a court must give effect to that language rather than determine what the law should or should not be, speculate as to legislative intent, add something not readily found in the statute, resort to canons of statutory construction, or consult legislative history." *Polson v. Farmers Ins. Co.*, 288 Kan. 165, Syl. ¶ 2, 200 P.3d 1266 (2009).

It is not disputed that the MHAH property meets the plain-language requirements of K.S.A. 2008 Supp. 79-201 *Second* and *Ninth*. MHAH uses the property to provide both living quarters and counseling for severely mentally ill citizens. These services are provided at no cost or reduced cost to individuals who would otherwise likely be homeless and without access to public assistance programs. MHAH does not make a profit from these services. These are clearly benevolent, charitable, and humanitarian purposes.

This position is consistent with the modern view of the status of not-for-profit residential facilities targeting populations with limited resources and special needs. See, *e.g.*, *St. Joseph's Living Center, Inc. v. Windham*, 290 Conn. 695, 966 A.2d 188 (2009) (not-for-profit nursing home that received some fees from residents was pure charity); *Isaiah 61:1, Inc., v. Bridgeport*, 270 Conn. 69, 851 A.2d 277 (2004) (halfway house for inmates is exclusively charitable use of land entitled to property tax exemption even though some residents paid some costs); *Banahan v. Presbyterian Housing*

*Corp.*, 553 S.W.2d 48 (Ky. 1977) (nonprofit corporations providing housing to families of elderly or handicapped persons at low rental rates were institutions of "purely public charity"); *Rio Vista Non-Profit Hous. Corp. v. Ramsey Cty.*, 277 N.W.2d 187 (Minn. 1979) (nonprofit corporation providing housing to families of modest income was "purely public charity" even though it received a portion of costs from renting families because tenants did not provide major source of project's revenue); *Gateway Rehab. v. Com'rs Cty. of Beaver*, 710 A.2d 1239 (Pa. Commw. 1998) (residential drug and alcohol treatment facility was purely charitable institution entitled to property tax exemption).

Because the plain language of both K.S.A. 2008 Supp. 79-201 *Second* and *Ninth* applies to the MHAH property, it is unnecessary to resort to statutory construction. Those provisions are not in conflict with K.S.A. 2008 Supp. 79-201b *Fourth*; it is possible, as the present case illustrates, for property to qualify under the former statutes without qualifying under the latter, and vice versa.

Two additional grounds support the result derived from the plain language of the statutes. First, the legislative history of the three statutes in question shows a clear intent on the part of the legislature to *broaden* the scope of property that is exempt by virtue of its charitable or humanitarian use. The analysis by the Court of Appeals reaches an incongruous contrary result—that the legislature enacted three statutes with the intention each would expand the scope of tax-exempt charitable-use property beyond the restrictive constitutional language, but that these statutes operate to cancel each other out. We do not agree. We cannot conclude that the legislature intended to create an exemption for property used to house certain low-income citizens but not for property used to house even lower-income citizens who have severe mental illnesses.

Second, the statutes address different situations. K.S.A. 2008 Supp. 79-201 *Second* governs property used exclusively for defined purposes, including benevolent and charitable purposes, and extends the exemption to those uses even when they are not provided strictly as gifts. K.S.A. 2008 Supp. 79-201 *Ninth* governs property used by community service organizations for the purporse of pro-

viding humanitarian services and extends the exemption to such property when it is owned and operated by not-for-profit corporations that qualify for federal income taxation exemption under § 501(c)(3) of the Internal Revenue Code. K.S.A. 2008 Supp. 79-201b *Fourth* governs property that is used to provide housing for certain qualified residents, even if the property is owned and operated by a not-for-profit corporation that does not qualify for federal tax exemption under § 501(c)(3). The legislature clearly spelled out the scope of each statute, and determining which statute to apply does not depend on distinguishing residential from nonresidential use. There is simply no conflict among the three statutes, and it is therefore improper to use the more-specific-statute rule of construction.

MHAH also argues that the denial of exempt status violates its constitutional rights to both equal protection and due process. Because we are reversing on the issue of statutory interpretation, we need not address whether the tax-exemption scheme is unconstitutional as applied.

The BOTA decision denying MHAH tax-exempt status is reversed. The Court of Appeals opinion affirming the BOTA decision is reversed. The matter is remanded to the State Court of Tax Appeals for further proceedings consistent with this opinion.

\* \* \*

BEIER, J., concurring: With regard to the decision in *In re Tax Exemption Application of Johnson County Housing Coalition, Inc.*, 29 Kan. App. 2d 322, 26 P.3d 1279, *rev. denied* 272 Kan. 1418 (2001), from a Court of Appeals panel on which I sat, it seems necessary to acknowledge that, through the intervention of my caring colleagues, the scales have now fallen from my eyes.