804

(300 P.3d 1105)
No. 108,119

In the Matter of the Equalization Appeal of WEDGE LOG-TECH, L.L.C./PIONEER WIRELINE SERVICES for the Year 2008 in Ellis County, Kansas, and In the Matter of the Application of WEDGE LOG-TECH, L.L.C./PIONEER WIRELINE SERVICES for Exemption from Ad Valorem Taxation in Ellis County, Kansas.

Opinion filed April 12, 2013.

*Thomas J. Drees*, county attorney, and *William W. Jeter*, county counselor, for appellant.

*Jarrod C. Kieffer*, of Stinson Morrison Hecker LLP, óf Wichita, for appellee.

Before MALONE, C.J., GREEN and STANDRIDGE, JJ.

MALONE, C.J.: Ellis County (the County) appeals the order of the Court of Tax Appeals (COTA) granting an application for exemption from ad valorem taxation filed by Wedge Log-Tech, L.L.C./Pioneer Wireline Services (the taxpayer). COTA granted the exemption based upon its finding that the taxpayer's wireline equipment is included in the category of commercial and industrial machinery and equipment as defined under subclass 5 of class 2 of § 1(a) of Article 11 of the Kansas Constitution. Personal property in this subclass is exempt from ad valorem taxation pursuant to K.S.A. 2012 Supp. 79-223(b). The County argues on appeal that the taxpayer's wireline equipment is properly classified with mineral leasehold interests under subclass 2 of the constitutional provision because wireline equipment is intrinsically related to the oil and gas industry.

Commercial and industrial machinery and equipment, as defined by the Division of Property Valuation (PVD) of the Kansas Department of Revenue, is "any taxable, tangible personal property [except for state assessed property and motor vehicles] that is used to produce income or is depreciated or expensed for IRS purposes." 2008 Personal Property Valuation Guide, § 2.05 at 58. At the hearing before COTA, the taxpayer showed, by a preponderance of the evidence, that the wireline equipment met these criteria. The County asked COTA to classify the taxpayer's wireline equipment as part of a mineral leasehold interest, but the County's reasons for doing so have no supporting legal authority and are contrary to the PVD's historical position on wireline equipment, which has been to classify it as commercial and industrial machinery and equipment. For these reasons, we affirm COTA's order granting the taxpayer's application for exemption from ad valorem taxation.

## FACTUAL AND PROCEDURAL BACKGROUND

The taxpayer operates a wireline data logging business. Most of the taxpayer's customers are oil and gas producers, but the taxpayer also provides services in relation to water wells, salt mines, and commercial disposal wells. Wireline equipment generally consists of data logging tools that are lowered on a truck-mounted wire into

well holes to take various readings. The wireline tools are never attached to the well, and the equipment is not owned by the well operator. Wireline equipment includes logging tools that test porosity, resistivity, and permeability of rock in order to analyze the presence of certain rock formations that may indicate the presence of oil or gas. Also included in wireline equipment are tools used to perform perforation operations, which penetrate a well's casing to obtain maximum reservoir productivity. In order to use wireline equipment, production from a well must be stopped and the production equipment removed.

For tax year 2008 and all prior years, the taxpayer reported its wireline equipment, along with other personal property assets, for tax purposes as schedule 5 property—commercial and industrial machinery and equipment—which falls under subclass 5 of class 2 of § 1(a) of Article 11 of the Kansas Constitution. The County listed the assessed value of the taxpayer's commercial and industrial machinery and equipment at $1,216,248. In 2008, the taxpayer asserted that its commercial and industrial machinery and equipment, including the wireline equipment, was exempt under K.S.A. 2012 Supp. 79-223(b), which exempts certain commercial and industrial machinery and equipment purchased after June 30, 2006, from ad valorem taxation.

Prior to 2008, the County had listed, classified, valued, assessed, and taxed the subject property as commercial and industrial machinery and equipment. But after the taxpayer applied for the exemption, the County notified the taxpayer that it had reclassified the subject property as schedule 2 property under subclass 2 of the constitutional provision, which covers mineral leasehold interests. The County disagreed with the taxpayer's request for an exemption and, after an informal hearing, the county appraiser found that the property was not exempt under K.S.A. 2012 Supp. 79-223(b).

On July 14, 2008, the taxpayer filed a notice of equalization appeal with the regular division of COTA, claiming improper valuation of exempt commercial and industrial machinery and equipment for tax year 2008. Additionally, in August 2009, the taxpayer filed an application for tax exemption for tax years 2007 through 2009, arguing again that the property was statutorily exempt.

COTA consolidated the equalization appeal and the exemption application, but the equalization appeal was dismissed during the hearing by agreement of the parties. Accordingly, the only matter remaining is the exemption application.

COTA held a hearing on February 9, 2010, at which both the taxpayer and the County presented witnesses and evidence. First, the taxpayer called Dean Denning, the county appraiser. Denning testified regarding the process by which the County initially assessed the subject property as schedule 5 property and certified it as such to the county clerk. Denning further admitted that all of the property the taxpayer claimed as exempt was either purchased after June 30, 2006, cost less than $1,500, or both.

On cross-examination, Denning testified that whether to classify property as schedule 2 or schedule 5 was not important to the appraiser's office until the legislature enacted the exemption for certain schedule 5 property. Denning testified that he believed the legislature did not intend to exempt property related to the oil industry; therefore, he believed that such property should be moved to schedule 2 "to keep [the property] from being exempt." Regarding the taxpayer's wireline equipment, Denning determined that the property was oil equipment schedule 2 property because the property "would have never been bought by the taxpayer if there was not an oil industry to use it in." Denning saw the issue as whether the property related more to oil and gas or to other manufacturing, and he believed that the taxpayer's business was oil and gas.

Next, the taxpayer called Craig McLaughlin, an open hole manager for the taxpayer, who testified regarding the type of work the taxpayer performs and how the taxpayer uses the wireline logging tools. McLaughlin emphasized that the taxpayer did not produce any oil and gas, nor did it own any mineral leasehold interests. McLaughlin testified that he believed the wireline equipment fell within the PVD's definition of "commercial and industrial machinery and equipment." McLaughlin also read the PVD's definition of "mineral leasehold interests" for purposes of taxation under schedule 2, but drew a distinction between the wireline equipment's use in *gathering information* about oil and gas wells and the

PVD's requirement that the equipment be used in *operating* the oil and gas wells to qualify as mineral leasehold interests.

Steve Ofstehage, the taxpayer's controller, verified the documentation supporting the exemption application, stating that the assets in question were purchased after June 30, 2006. Ofstehage also read aloud K.S.A. 2009 Supp. 79-223(b) and explained why he believed the wireline equipment was exempt under the statute. Ofstehage testified that the wireline equipment provided information about oil and gas wells, which was an exempt use, and the well owners then used the information to operate the wells.

The taxpayer then called Ronald Cook, a registered professional petroleum engineer, to testify. COTA accepted Cook as qualified as an expert on the PVD's Oil and Gas Appraisal Guide. Cook had extensive experience with wireline equipment and had prepared an expert report in which he concluded that the wireline equipment at issue here was schedule 5 property, not schedule 2 property. Cook also distinguished between schedule 2 equipment, which is used in the extraction of oil and gas or the operation of oil and gas wells, and wireline equipment, which he characterized as being used "to quantify reservoir properties," not to operate oil and gas wells.

The County called Lisa Ree, the deputy county appraiser who had assisted with reviewing the rendition the taxpayer filed for the tax years at issue; she had also made the determination to adjust certain items from schedule 5 to schedule 2. When asked the standard by which she determined whether property fell under schedule 5 or schedule 2, Ree stated she based it on "[w]hether it's regular personal property or whether it's oil field use" and that if she was uncertain of the use, she decided in favor of taxation.

The County next called Lynn Kent, the manager of the oil and gas section at the PVD. Kent was responsible for publishing the PVD's Oil and Gas Appraisal Guide and assisting county appraisers with questions on valuing oil and gas properties. Kent testified that she had been the manager of the oil and gas section at the PVD when the legislature enacted K.S.A. 79-223 and that she "was told by numerous staff members here and also having talked to the oil and gas industry representatives, that there was no equipment that

was considered as oil and gas-related to be included as exempt in this . . . exception." Kent further testified that she believed wireline equipment "is very necessary in discovering oil and gas properties and—and then producing oil and gas properties," although she admitted that the wireline equipment was not used in the "actual extraction" of the oil and gas. Kent acknowledged that no other county but Ellis County is classifying wireline equipment as schedule 2 mineral leasehold interest property. She stated that other counties are "waiting to see the results of this case" to know whether to classify wireline equipment as schedule 2 property.

COTA took the matter under advisement, and both parties filed posthearing briefs. On March 13, 2012, COTA filed its order; the next day, COTA filed a corrected order to correct typographical errors and an error in the certification of the original decision. In the corrected order, COTA granted the taxpayer's application for exemption. COTA noted that the burden was on the taxpayer to prove by a preponderance of the evidence that it was entitled to the statutory exemption. COTA concluded that "based on the existing regulatory framework as interpreted and applied by taxing authorities throughout Kansas, this court finds the applicant here has established that all of the subject property satisfies the statutory requirements for exemption." The County filed a petition for reconsideration, which was denied. The County subsequently filed a petition for judicial review with this court.

## DID COTA PROPERLY CLASSIFY THE WIRELINE EQUIPMENT AS COMMERCIAL AND INDUSTRIAL MACHINERY AND EQUIPMENT?

On appeal, the County limits its question to whether the taxpayer's wireline equipment should be classified as commercial and industrial machinery and equipment under subclass 5 of class 2 of § 1(a) of Article 11 of the Kansas Constitution or as a mineral leasehold interest under subclass 2 of the same constitutional provision. The County argues that COTA erred and the wireline equipment is properly classified as a mineral leasehold interest under subclass 2. The taxpayer contends that COTA correctly found that the wireline equipment is commercial and industrial machin-

ery and equipment under subclass 5 and is therefore eligible for an exemption.

The proper classification is important because the classification controls whether the wireline equipment is exempt from ad valorem taxation. K.S.A. 2012 Supp. 79-223(b) exempts from taxation "[c]ommercial and industrial machinery and equipment acquired by qualified purchase or lease made or entered into after June 30, 2006, as the result of a bona fide transaction not consummated for the purpose of avoiding taxation." For purposes of the exemption, the statute defines "commercial and industrial machinery and equipment" as "property classified for property tax purposes within subclass (5) of class 2 of section 1 of article 11 of the constitution of the state of Kansas." K.S.A. 2012 Supp. 79-223(d)(2). Other than referencing the constitutional classification, however, the statute provides no definitional guidance.

Section 1(a) of Article 11 of the Kansas Constitution establishes the system of taxation in Kansas and states:

"Property shall be classified into the following classes for the purpose of assessment and assessed at the percentage of value prescribed therefor:

. . . .

"Class 2 shall consist of tangible personal property. Such tangible personal property shall be further classified into six subclasses, shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:

. . . .

"(2) Mineral leasehold interests except oil leasehold interests the average daily production from which is five barrels or less, and natural gas leasehold interests the average daily production from which is 100 mcf or less, which shall be assessed at 25% ...................................................... 30%

. . . .

"(5) Commercial and industrial machinery and equipment which, if its economic life is seven years or more, shall be valued at its retail cost when new less seven-year straight-line depreciation, or which, if its economic life is less than seven years, shall be valued at its retail cost when new less straight-line depreciation over its economic life, except that, the value so obtained for such property, notwithstanding its economic life and as long as such property is being used, shall not be less than 20% of the retail cost when new of such property ................................................................... 25%"

In its order, COTA examined the circumstances surrounding the 1986 constitutional amendment that created the classification scheme at issue:

"This language was adopted by amendment in 1986, creating the property classification scheme that exists to this day. Like most constitutional provisions, this section is expressed in broad terms. In particular, we note that subclass 2(5) is so broadly drawn as to conceivably embrace property within any of the other tangible personal property subclasses. In view of this contextual ambiguity, our interpretation must not be narrow or technical but should be based on the facts and circumstances giving rise to the provision's enactment. [Citation omitted.]

"Leading up to the 1986 constitutional amendment, the Kansas Tax Review Commission was formed to advise the legislature on exigent property tax issues. This commission concluded that statewide reappraisal was appropriate because property was not being taxed uniformly and equally throughout the state. *See* Kansas Tax Review Commission, *Final Report and Recommendations*, P-5 (1985). In its report, the commission concluded that additional changes in the law were necessary to mitigate shifts in tax burden among the various classes of property that would inevitably result from reappraisal. *See id.* at P-6. The commission recommended 'a comprehensive, straightforward classification system.' *See id.* at P-9. The legislative history indicates no intention to redefine the substantive criteria for property classification. In fact, the commission's final report suggests the opposite—that the amendment's purpose was to mitigate the anticipated disproportionate effects of reappraisal on *existing* classes of property throughout the state."

This court reviews COTA decisions under the guidance of the Kansas Judicial Review Act (KJRA), K.S.A. 2012 Supp. 77-601 *et seq.* Under the KJRA, the burden of proving the invalidity of COTA's action rests on the party asserting invalidity. See K.S.A. 2012 Supp. 77-621(a)(1). This court is authorized to grant relief only in limited circumstances, including where the agency erroneously interpreted or applied the law. See K.S.A. 2012 Supp. 77-621(c)(4). Both parties agree that the issue revolves around the correct classification of the wireline equipment. Because there is no factual dispute, the issue presented is a question of law. See *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1211, 221 P.3d 580 (2009) ("Whether certain property is exempt from ad valorem taxation is a question of law if the facts are not in dispute . . . ."). Accordingly, it appears that this court may only grant the County relief if it determines that COTA erroneously interpreted or applied the law in reaching its decision that the wireline equipment is commercial and industrial machinery and equipment and therefore eligible for the exemption. Issues involving constitutional or statutory interpretation are questions of

law over which an appellate court has unlimited review. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009).

The touchstone of interpreting or construing statutory language is legislative intent. *Law v. Law Company Building Assocs.*, 295 Kan. 551, 566, 289 P.3d 1066 (2012). To determine legislative intent, an appellate court must begin by examining the language the legislature used in the statute. 295 Kan. at 566. "Only if that language is ambiguous does a court rely on any revealing legislative history or background considerations that speak to legislative purpose, as well as the effects of application of canons of statutory construction." 295 Kan. at 566. As the County notes, however, the general rule is that statutes imposing a tax must be interpreted strictly in favor of the taxpayer, but "tax exemption statutes are interpreted strictly in favor of imposing the tax and against allowing an exemption for one that does not clearly qualify." See *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. at 1211.

This case, however, also implicates constitutional language. COTA noted in its order that the rules governing interpretation of constitutional provisions differ from those regarding statutory interpretation. The beginning analysis is the same: " 'In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers and adopters of that provision.' [Citation omitted.]" *State ex rel. Six v. Kansas Lottery*, 286 Kan. 557, 562-63, 186 P.3d 183 (2008). The difference appears in that statutory interpretation looks to the plain language of the statute first, whereas, " ' "[i]n interpreting and construing the constitutional amendment, the court must examine the language used *and consider it in connection with the general surrounding facts and circumstances that. cause the amendment to be submitted.*" [Citation omitted.]' [Citation omitted.]" (Emphasis added.) *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 621, 78 P.3d 419 (2003).

The taxpayer maintains that COTA properly held that the subject property is commercial and industrial machinery and equipment. The Personal Property Valuation Guide (PPV Guide) promulgated by the PVD defines commercial and industrial machinery

and equipment as "any taxable, tangible personal property [except for state assessed property and motor vehicles] that is used to produce income or is depreciated or expensed for IRS purposes." 2008 Personal Property Valuation Guide, § 2.05 at 58. At the hearing before COTA, the taxpayer showed, by a preponderance of the evidence, that the wireline equipment met these criteria. McLaughlin and Ofstehage testified that the assets in dispute are tangible personal property, except State-assessed property or vehicles, that are used to produce income and are depreciated or expensed for IRS purposes. Furthermore, Cook provided expert testimony about his extensive experience with wireline equipment and concluded that the equipment at issue here was schedule 5 property.

Moreover, the evidence established that the assets at issue are not schedule 2 mineral leasehold interests. The PPV Guide states:

"For purposes of taxation, oil and gas leases, oil and gas wells, all casing, tubing and other equipment and materials used in operating oil and gas wells are considered personal property. The Kansas Constitution classifies personal property that qualifies as Mineral Leasehold Interests (oil and gas) into Class 2, Subclass 2 (2.02) for property tax purposes." 2008 Personal Property Valuation Guide, § 2.02 at 19.

Based on the PPV Guide, the PVD has historically classified drilling rigs, casing, tubing, and other equipment as schedule 2 mineral leasehold interest property when the equipment is actually used in extracting oil and gas from the ground. But as Kent acknowledged in her testimony, no other county but Ellis County is classifying wireline equipment as schedule 2 mineral leasehold interest property. Furthermore, Kent testified that the PPV Guide, which is the only source for classifying *any* equipment under schedule 2, has *never* listed wireline equipment as itemized equipment under schedule 2. Instead, she testified that "currently the [PVD] takes the positions that wireline equipment is [machinery] and [equipment]."

In its appellate brief, as it did in its posthearing briefs, the County relies heavily on COTA's analysis and order in *In the Matter of the Application of McPherson Drilling for Exemption from Ad Valorem Taxation in Montgomery County, Kansas*, Docket No. 2009-156-TX. This case concerned a request for exemption under

K.S.A. 2008 Supp. 79-223 for two drilling rigs used for " 'drilling oil and gas wells.' " Docket No. 2009-156-TX, slip op. at 1. The taxpayer asserted that the rigs fell within the definition of commercial and industrial machinery and equipment and were therefore exempt. Docket No. 2009-156-TX, slip op. at 2. At the hearing before COTA, Lynn Kent gave undisputed testimony that the Kansas Oil and Gas Appraisal Guide instructed that drilling rigs should be valued as part of an oil and gas leasehold interest and that such rigs had been classified and taxed in that manner since 1965. Docket No. 2009-156-TX, slip op. at 5. After reciting the applicable law, COTA denied the application for exemption from taxation for the drilling rigs. Docket No. 2009-156-TX, slip op. at 6.

The facts herein are clearly distinguishable from the facts in *McPherson Drilling.* In that case, the subject property was two drilling rigs which were clearly used to extract oil and gas from the ground. By contrast, the wireline equipment which is the subject property herein is diagnostic in nature. The wireline tools are never attached to the well, and the equipment is not owned by the well operator. In fact, the evidence herein established that in order to use wireline equipment, production from a well must be stopped and the production equipment removed. Also, in *McPherson Drilling*, Kent testified that the Oil and Gas Appraisal Guide instructed that drilling rigs should be valued as part of an oil and gas leasehold interest and that such rigs had been classified and taxed in that manner since 1965. In her testimony herein, Kent acknowledged the opposite fact, *i.e.*, that the Oil and Gas Appraisal Guide has never listed wireline equipment as itemized equipment under schedule 2.

The County argues that wireline equipment is so intrinsically related to the oil and gas industry that the equipment should be classified with mineral leasehold interests for tax purposes. But the County provides no statutory or constitutional authority for the proposition that any equipment that is intrinsically related to the oil and gas industry—a vague standard at best—should be assessed and taxed as a mineral leasehold interest. At the COTA hearing, Kent seemed to state that authority could be found in K.S.A. 79-329, which states:

"For the purpose of valuation and taxation, all oil and gas leases and all oil and gas wells, producing or capable of producing oil or gas in paying quantities, together with all casing, tubing or other material therein, *and all other equipment and material used in operating the oil or gas wells* are hereby declared to be personal property and shall be assessed and taxed as such." (Emphasis added.)

As the taxpayer points out, however, this statute does not state that "all other equipment and material used in operating the oil or gas wells" shall be declared personal property *assessed and taxed as a mineral leasehold interest* under subclass 2 of class 2 of § 1(a) of Article 11 of the Kansas Constitution. The statute only mandates that such equipment be assessed and taxed as personal property. Class 2 of § 1(a) of Article 11 of the Kansas Constitution lists six subclasses of tangible personal property; both mineral leasehold interests and commercial and industrial machinery and equipment are classifications of personal property that would satisfy K.S.A. 79-329.

Even if this court adopted the County's assertion that all equipment intrinsically related to the oil and gas industry should be taxed under schedule 2, the evidence fails to establish that the taxpayer's wireline equipment satisfies this test. In its brief, the County states that "[a]ll six witnesses testified that 'but for' the oil and gas industry, the wireline industry would not exist." As the taxpayer points out in its brief, however, this statement is not accurate. None of the taxpayer's three witnesses (McLaughlin, Ofstehage, and Cook) testified that the wireline industry would not exist but for the oil and gas industry. Although McLaughlin testified that the taxpayer would not operate in Ellis County if there were no oil and gas producers there, McLaughlin also testified that the taxpayer provided services for industries other than oil and gas. Specifically, McLaughlin testified that the taxpayer provided services for water wells, salt mines, and disposal wells.

Beyond the fact that the County fails to provide any authority for this court to adopt its asserted test for classifying property as schedule 2 mineral leasehold interests, K.S.A. 2012 Supp. 79-223(c) expressly prohibits reclassification of schedule 5 property for the purpose of avoiding the tax exemption provided by the statute. K.S.A. 2012 Supp. 79-223(c) provides, in pertinent part:

"The county appraiser shall not reclassify any property that is properly classified for property tax purposes within subclass (5) of class 2 of section 1 of article 11 of the constitution of the state of Kansas." As Kent confirmed in her testimony, this provision was specifically added to the statute by the legislature in 2008 to prevent county appraiser's offices throughout the state from reclassifying property to avoid the exemption that the legislature intended.

Simply put, the legislature has prohibited the County from doing what it is now trying to do—reclassify the taxpayer's property to deny the exemption that the legislature intended. Denning, the county appraiser, acknowledged that prior to 2008, the County classified the subject property as commercial and industrial machinery and equipment. But Denning admitted, under questioning from his own counsel, that he reclassified the wireline equipment in 2008 "to keep [the property] from being exempt." By doing so, the County violated the express directive of K.S.A. 2012 Supp. 79-223(c).

Finally, the County challenges COTA's statement that it is the role of the legislature, not COTA, to implement a shift in ad valorem tax policy in Kansas. In its order, COTA reiterated Kent's testimony, when she was asked the PVD's position on how wireline equipment should be classified, where she stated that the PVD was waiting for COTA to rule on the correct classification. COTA then stated:

"We respectfully disagree with PVD's decision to rely on the adjudication process to redefine the parameters of tax classification for standard items of equipment used in the oil and gas industry. Granted, an important role of this court is to help define the law through adjudication, particularly where proper application of the law is uncertain under a given set of circumstances. But in order for adjudication to be a legitimate means of ordering the rights and obligations of litigants, there must exist authoritative rules that can be applied. In contrast to administrative orders, which are *ad hoc* decisions driven by the facts of a particular case, actions by administrative agencies which create standards of general application should be adopted by rule. [Citation omitted.] This court believes that rulemaking, not adjudication, is the proper vehicle for implementing a shift in tax policy with such broad application and wide-ranging impact as that proposed here by Ellis County."

We agree with COTA that it is the role of the legislature, not COTA or this court, to implement a shift in ad valorem tax policy

in Kansas. The PVD has historically classified wireline equipment as schedule 5 commercial and industrial machinery and equipment. If the County desires to change the historical classification of wireline equipment from schedule 5 property to schedule 2 property, the proper avenue is either promulgation of the change through the appropriate PVD guides or through statutory changes made by the legislature. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 348, 277 P.3d 1062 (2012) ("the legislature, unlike the judiciary, is one of the branches of government charged with development of public policy on behalf of the electorate"). Under the current constitutional and statutory scheme in Kansas, we conclude that COTA properly classified the taxpayer's wireline equipment as commercial and industrial machinery and equipment, thereby making the property exempt from ad valorem taxation pursuant to K.S.A. 2012 Supp. 79-223(b).

Affirmed.